No ———

* STATE EX REL. M. J. CUNNINGHAM, ATTORNEY GENERAL, VS. H. L. LAZARUS, JUDGE.

A rule to tax costs, and judgment thereon, are interlocutory, and form parts of the original proceedings.

It is a general rule that the sovereign cannot be sued in his own court without his consent; and hence no direct judgment can be rendered against him therein for costs, except in the manner, and on the conditions, he has prescribed.

When a state submits itself to the jurisdiction of a court in a particular case, either by the institution of suit or permitting itself to be sued, that jurisdiction may be used to give full effect to what the State has, by its act of submission, allowed to be done.

But it is the duty of the courts of the State to carefully examine the acts of submission, and determine the extent to which jurisdiction extends, and render judgment accordingly.

Neither the constitution nor the law governing such a proceeding as this confers jurisdiction on this court to render a direct judgment against the State for the costs of taking testimony therein, in any event.

W. S. Benedict, for Plaintiff.

M. J. Cunningham, Attorney General for the State.

The opinion of the court was delivered by

WATKINS, J. This proceeding by rule, to have the fees of Arthur. McGuirk, for services rendered in the course of the trial of the aforesaid cause, as an expert stenographer and type-writer, taxed as costs, is one taken in the original suit, and the decree we are invited to render is an interlocutory one, and will, when rendered, form an *addendum* to the original judgment therein. Iron-Works vs. Reuss, 40 La. Ann. 112; 3 South. Rep. 505, Rev. St. § 750. By the terms of the original decree, the charges made by the relator were sustained, the respondent removed from office, and condemned to pay all the costs of

the proceedings. State vs. Lazarus, 39 La. Ann. 162, 1 South. Rep. 361. Of course, that judgment is a finality, with respect to the respondent, except as to the items and amount of the stenographer's bill. But quite a different question is presented for solution in respect to the State, because the State was personated by the attorney general as the relator. It is claimed by counsel for the plaintiff in rule that, notwithstanding judgment went in favor of the relator for "the costs of the proceedings," yet the State occupies the position of plaintiff in an ordinary civil action, and hence she is primarily bound to officers of courts for their costs. As it is of great importance, we will dispose of this issue first, it having been submitted as an exception of no cause of action.

Resistance to the demands of the plaintiff in rule is made by the attorney general on the authority of State vs. Succession of Taylor 33 La. Ann. 1270; State vs. Taylor, 34 La. Ann. 978. After what appears to us to have been a careful examination of the question of the State's liability for payment of costs in her own courts, we said in the former case : "The present suit is one in which the State is a party in her own name, and to enforce her own rights, and not those of any person or individual. In her own courts, constituted by herself, whose officers are appointed by herself, and whose costs and fees are paid by herself out of the fund created for that purpose, it would be an extraordinary proceeding to require her to furnish security for the payment of costs." Page 1273. In the latter we quoted the former with approval, and said : "It is well settled in American jurisprudence that the sovereign never pays costs. This doctrine, which is an essential element of our system of government, was recently recognized by us in the case of State vs. Succession of Taylor, 33 La. Ann. 1271."

But counsel for plaintiff argues that, in the case of State vs. Succession of Taylor, the question was not the actual liability of the State for costs, but her obligations *vel non* to furnish security for costs antecedent to judgment; that, as in that case, there appeared to have been no final judgment rendered for or against the State, the question here was not before us ; and that State vs. Taylor was a criminal case, and the cost, in such cases, are governed by the provisions of Rev. St. §§ 1042, 1076. As this is a question of vital importance to the plaintiff in rule, and the amount claimed is large,—being in excess of $3,000,—it may be well to look into the authorities on the subject, and apply the law to the facts of this case.

In the first place, as plaintiff's counsel seems to rely on it, we will examine the federal jurisprudence on the question.

In *The Antelope*, 12 Wheat. 549, the Supreme Court say: "It is a general rule that no court can make a direct judgment or decree against the United States for costs and expenses, in a suit to which the United States is party, either on behalf of any suitor, or any officer of the government. As to the officers of the government, the law expressly provides a different mode. * * * Their accounts must be certified to and paid out of the treasury, and cannot lawfully constitute any part of the judgment or decree in the cause."

As announcing a different principle, counsel cite us to what is said in U. S. vs. Ringgold, 8 Pet. 163, and which, after quoting *ipsissimis verbis* the rule as formulated in the opinion *supra*, is in these words: "But it by no means follows that they [the United States] are not liable for their own costs. No direct suit can be maintained against the United States. But when an action is brought by the United States to recover money in the hands of a party who has a legal claim against them, it would be a very rigid principle to deny to him the right of setting up such a claim in a court of justice, and turn him around to an application to congress."

There is nothing, to our thinking, that is in the least contradictory or conflicting in those opinions. They are to the effect that no direct judgment can be rendered by any court against the United States for costs. They do not declare that they are not liable for them in proper cases. Now, what the court said, in the case last cited, with regard to the "legal claim" of the defendant in a civil action brought by the United States, was to merely sanction his right to urge it in that suit as a reconventional demand. It did not say that he might take a judgment against the United States for cost of such demand. All those questions were evidently governed by the act of Congress of the 8th of May, 1792, and subsequent acts in relation to judicial costs and other expenses, accounts of which were to be paid from the national treasury upon proper certification and approval of some competent judge.

Those decisions are in accord with our own jurisprudence. It is a familiar principle "that the sovereign cannot be sued in his own courts without his consent." State vs. Burke, 34 La. Ann. 548, and authorities collated therein. And it is perfectly true that, as said by the Supreme Court in Louisiana vs. Jumel, 107 U. S. 728, 2 Sup. Ct. Rep. 128: "When a State submits itself, without reservation, to the jurisdiction of a court in a particular case, that jurisdiction may be used to give full effect to what the State has, by its act of submission, allowed to be done;" but it is the imperative duty of such court to look carefully into the act

of submission, and the law under which the submission is made, and determine whether it was done without reservation or qualification ; else the judgment it should render in the premises would be nugatory, and of no binding force against the State.

The case of Mahan vs. Sundry Defendants, 22 La. Ann. 583, was a suit by the clerk of the Fourth District Court of the Parish of Orleans, to compel the State Auditer to warrant for "costs in certain cases" in his favor, on an appropriation made by the legislature in 1870, in these words, viz : "Appropriation to pay costs in suits when the State loses the case, $2,000, or so much thereof as may be necessary." Act 35 of 1870. The cases in which those costs were incurred were suits instituted by tax collectors, and had relation to the collection of the revenue. The court said : "The State is, doubtless, responsible for all costs legally incurred in its behalf, but the mode of paying them is to be provided by the legislature. The appropriation in question is not' in our opinion, the provision made for the payment of the costs claimed in this proceeding. If the statute authorizing the suits, or proceedings in which they accrued, does not provide for their payment, or some other special statute, the clerk took the risk of the legislature providing for them, when applied to."

Referring to the statute under which proceedings were conducted against the respondent in this case, we are confronted with this provision, viz: " That in all such cases the defendant judge shall be condemned to pay the costs, if judgment be rendered against him ; otherwise, judgment for costs shall be rendered as is provided for in Article 200 of the State Constitution." Acts La. 1880, No. 122, § 7. That article provides that, "in all cases where the officer sued as above directed shall be acquitted, judgment shall be rendered against the citizens signing the request for all costs of the suit."

Applying the principles of law, State and Federal—and, we take it, they are unmistakably sound—it is obvious that the State has not consented that we should render a judgment against her, in a suit which was decided favorably to her, for the cost of taking testimony therein. This being an exceptional proceeding—neither criminal nor civil, but one partaking of the character of an impeachment—we must look to the provisions of the Constitution, and the law putting same in force, as the source of our jurisdiction, and its extent. Viewing them in the light we do, we are constrained to decide that the plaintiff in rule has no right of action against the State, and that we are without power to render judgment against her in his favor. But we are far from holding that the State is not, in law and justice, bound to pay the plaintiff

for his valuable services and necessary labor, done in a litigation pro-
voked and carried on in the State's own interest, and by constitutional
direction, in case his primary recourse against the defendant shall
prove unavailing. On the contrary, we consider it to be her unques-
tionable duty to provide such payment. But her exemption from judi-
cial compulsion would render nugatory any action which might be
taken by us, either in decreeing her liability, or fixing the amount
thereof; and we must therefore decline such action.

On the other branch of the case there is but little to say. No ques-
tion is raised by the respondent with regard to the amount or charac-
ter of the plaintiff's demands. He was duly cited, but made neither
appearance nor answer, and there was no countervailing evidence
adduced in his favor. In rendering judgment, we adopt the amount
stated in plaintiff's evidence, because respondent has not questioned
the correctness of his account; it was approved by his counsel, and
sworn to by the plaintiff as a witness. But we do not, by any means,
thereby signify any opinion as to the measure of the State's liability,
in case the legislative department of the government shall provide for
its payment.

By reason of the default of the respondent, and the law and the evi-
dence being in favor of the plaintiff in rule, and against the respond-
ent, it is ordered, adjudged and decreed that the amount of the plain-
tiff's demands be fixed at the sum of $3,220. It is further ordered,
adjudged and decreed that the plaintiff's demands against the State
be rejected, because he has no right of action, and because this Court
is without jurisdiction to render judgment against the State in a mat-
ter in which she has not yielded her assent. It is further ordered that
the plaintiff in rule pay the costs of his proceedings against the State,
and that he recover the remainder thereof against the respondent.

