85 So.2d 10

Lloyd J. COBB

v.

The LOUISIANA BOARD OF
INSTITUTIONS et al.

No. 42158.

Dec. 12, 1955.

Rehearing Denied Jan. 16, 1956.

Second Rehearing Denied Feb. 20, 1956.

Fred S. LeBlanc, Atty. Gen., W. C. Perrault, First Asst. Atty. Gen., W. D. Atkins, Asst. Atty. Gen., for defendants-appellants.

Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff-appellee.

McCALEB, Justice.

Plaintiff brings this suit against the Louisiana Board of Institutions and the State of Louisiana to recover for the death of 20 registered Aberdeen Angus breeding cows which allegedly resulted from eating black strap molasses purchased by him from the Louisiana State Penitentiary, an agency under the jurisdiction of the Board of Institutions. The action is for $50,000 damages and is founded on an asserted breach of contract, the charge being that the molasses sold by the State Penitentiary was unfit for animal consumption.

In limine, the defendants interposed exceptions to the jurisdiction of the court and of no right or cause of action. These exceptions were overruled and defendants answered, denying that the molasses was contaminated or that the death of plaintiff's cows is attributable to it. After a trial, judgment was rendered for plaintiff as prayed for, from which defendants have appealed.

Under the exceptions to the jurisdiction and of no right of action, the Louisiana Board of Institutions maintains that it is an unincorporated administrative agency of the State and that, not being sui juris, it is incapable of standing in judgment. The plea is well taken.

The Board was created by Act 48 of 1952, which was added as Section 30 to Article 6 of the Constitution, by vote of the people on November 4, 1952. This body is merely an administrative agency having no separate existence apart from the State; it is not sui juris and any action directed against it is, in reality, a suit against the State. Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666. Such an unincorporated body is incapable of standing in judgment. State ex rel. Dodd v. Tison, 175 La. 235, 143 So. 59.

The exception to the court's jurisdiction filed by the State is based on the elementary principle that the State may not be sued without its consent. Counsel for plaintiff, of course, recognize this rudi-

mentary tenet of law. But they conceive there is an exception to the rule and profess the State may be sued without its consent for a breach of contract when it is acting in a proprietary capacity. It is said that, since the Louisiana State Penitentiary is authorized to sell its surplus farm products, R.S. 51:692.10, the proceeds of the sales to be deposited in a revolving fund established by R.S. 51:692.9, the State is in the position of any other vendor and liable for breach of the warranty of fitness exacted by Articles 2475 and 2476 of the Civil Code. To substantiate this proposition, counsel rely upon State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519; Begnaud v. Grubb & Hawkins, 209 La. 826, 25 So.2d 606 and Texas Company v. State Mineral Board, 216 La. 742, 44 So.2d 841.

The contention cannot be sustained as there are no exceptions to the immunity of the State from suit without its consent. Indeed, this principle, which is given full recognition in our Constitution by Section 35 of Article 3, denies to the courts power to hear and determine suits against the State where consent has not been obtained in the manner therein provided. That Section recites in part:

"Whenever the Legislature shall authorize suit to be filed against the State

it shall provide the method for citing the State * * *".

Implicit in this language is the prohibition that no suit shall be entertained unless authorized by the Legislature. Nothing is so firmly established, not only in Louisiana but throughout this country, as the doctrine of the State's immunity from suit in its own Courts without its consent[1] and further comment would be unnecessary but for the erroneous (albeit inconsequential insofar as the result in the case was concerned) view expressed by this Court in one of its comparatively recent opinions, Begnaud v. Grubb & Hawkins, supra, which is in plain conflict with all the jurisprudence, as we shall hereinafter demonstrate.

The trial judge accepted jurisdiction of the present case under the mistaken belief that the State's right to claim immunity from suit depended on whether the action against it is founded on a contract or ex delicto. This view apparently resulted from confusing suits against the State without its consent on the same basis with those brought against it with its consent or against municipalities or incorporated State agencies, wherein it has been generally ruled that they may be held amenable for the enforcement or breach of their contracts but not necessarily for the torts of their employees when they are engaged in the performance of governmental functions

1. See 49 Am.Jur. Verbo "States, Territories and Dependencies" Sections 91–95; 81 C.J.S., States, §§ 214 and 216; Annotations 42 A.L.R. 1464–1496 and 50 A.L.R. 1408.

as distinguished from private or proprietary pursuits.[2] But no such distinctions between suits in contract or in tort apply when the State itself, as the party defendant, has not consented to the suit. This is clearly shown by the opinion of this Court in the Landmark case of State ex rel. Hart v. Burke, 1881, 33 La.Ann. 498.

In that matter, the complainant, as holder and owner of coupon bonds issued by the State, instituted a mandamus proceeding coupled with a prayer for an injunction against the State Auditor and State Treasurer to prevent them from disposing of public monies in the State Treasury and to compel them to pay him out of said monies the amount of $75,000, which he alleged was due on his bonds. These State Officers appeared and pleaded that the Court was without jurisdiction as the action was actually one against the State which had not given its consent to be sued. The plea was sustained in a scholarly opinion by Chief Justice Bermudez who, after a comprehensive review of the applicable authorities on the subject, stated:

"When the judiciary department of the government was instituted to expound the law and to distribute justice among individuals, the State was not subjected to its authority. She cannot be assimilated to an individual citizen.

The mission of the State is to take care of the universal or the general interest. She cannot be brought to the bar of justice and sentenced like an individual, still less forced to perform what might be considered to be an obligation. Clear cases of an administrative character may sometimes be submitted to the tribunals. Officers or agents may be arraigned for breach of actual duty, or for malfeasance in office, but only so long as the will of the State has not been expressed to the contrary. However numerous the exceptional cases may be, the rule unquestionably is that the State cannot be called without her formal consent before civil tribunals as individuals are, and that the judiciary cannot take cognizance of suits the object of which is to declare the State to be a debtor and to force the State to pay her debts, and that State officers cannot be compelled to act against the real will of the State. *There is no instance of a suit commenced on a contract, for the performance of duty or payment of a debt, in which judgment was ever rendered against a State to coerce either*

\*   \*   \*   \*   \*   \*

"So, when a question affecting the validity even of a provision of the State

---

2. See Annotation 40 A.L.R.2d 927; Rome v. London & Lancashire Indemnity Co., 181 La. 630, 160 So. 121 and particularly Manion v. State Highway Commissioner, 303 Mich. 1, 5 N.W.2d 527, certiorari denied 317 U.S. 677, 63 S.Ct. 159, 87 L. Ed. 543, noting the distinction between sovereign immunity from suit and sovereign immunity from liability.

Constitution itself, on the ground of conflict with the Federal Constitution, arises in a litigation between parties amenable to judicial process, and whose rights are subject to judicial determination, courts may, and must determine such question, and deny effect to the provision, if it be found to be violative of the paramount law. *But, though a State impair, nay, repudiate the obligation of her own contracts, and though if she were liable to suit, courts might annul her acts in that direction, yet, as she is not amenable to suit, it does not lie within the sphere of judicial power to compel her to perform her obligations.*" (Italics ours.)

The grave question presented in the Burke case, i. e., whether the State could be compelled to submit to the jurisdiction of its courts to litigate a claim that it was, through its officers, impairing the obligations of its contract—impelled the court to elaborate upon its views in answer to complainant's application for a rehearing. In adhering to its original findings the Court, through Justice Fenner, declared:

*"The immunity of the State of Louisiana from suit in her own courts means absolute immunity from judicial compulsion, directly or indirectly, so far*

3. It is apt to point out that, at the time the Burke case was written (1881), there was no constitutional provision setting forth the procedure in suits against the

*as the performance of her own contracts or obligations are concerned.*

\*     \*     \*     \*     \*     \*

"The State courts, in the exercise of the powers and duties imposed upon them by the Constitution of the United States and confirmed by the Constitution of the State, have the undoubted right to pronounce the nullity of provisions of the State Constitution on the ground that they violate the paramount law, by impairing the obligation of contracts. But that can only be done in suits within the jurisdiction of the court, and involving the enforcement of such contracts. As the contract of a State cannot be judicially enforced against her by her own courts, it follows that the question, whether or not a provision of her Constitution impairs the obligation of her own contract, can never be the subject of judicial cognition." (Italics ours).

It would serve no useful purpose to cite and discuss herein the numerous decisions written both before and after the Burke case with views in concordance with that authority.[3] It suffices to refer to State ex rel. Cunningham v. Lazarus, 40 La. Ann. 856, 5 So. 289; State v. Liberty Oil Co., 154 La. 267, 97 So. 438 and Lewis v. State, 207 La. 194, 20 So.2d 917.

State when authorized by the Legislature. This provision first appeared in Article 192 of the Constitution of 1898.

The suit herein is one for a monied judgment against the State for a breach of contract. Consent of the Legislature for the institution of the suit not having. been obtained in the manner provided by Section 35 of Article 3 of the Constitution, as amended by Act 385 of 1946, the district court and this court are without jurisdiction to entertain it and it should have been dismissed.

The case of State ex rel. Shell Oil Co. v. Register of State Land Office, supra, cited by counsel for plaintiff, is not apposite. That was not a suit brought against the State without its consent but a mandamus proceeding wherein the Shell Oil Company sought an order directing the Register of the State Land Office to accept a tender of delay rentals on certain mineral leases which had been executed by the Governor in favor of the relator. The question was whether the Register of the Land Office and the State (which was not a party to the suit) were estopped from denying the validity of the lease. The Court simply held that, when the State contracts, it is like a person; that it cannot receive the benefits of the agreement and not assume its burdens and that therefore the doctrine of estoppel applies to it to the full extent that it does to individuals.

In Begnaud v. Grubb & Hawkins, on which counsel for plaintiff strongly depend, Begnaud instituted a possessory action against Grubb & Hawkins and others.

Those defendants, who had acquired certain mineral rights on the land in question from the State Mineral Board, called the latter and the State itself in warranty. The State and the Mineral Board filed exceptions of no right or cause of action to this call,[4] contending that the State could not be joined as a party without its consent.

The exceptions were properly overruled as to the State Mineral Board, the Court holding that, since the Board was a body corporate vested with express authority to sue and be sued and with full power to lease all lands belonging to the State, there could be no doubt that it was subject to judicial process on contracts made by it in its corporate capacity. However, notwithstanding that it was entirely unnecessary to its decision in the case since the Mineral Board had already been declared to be the proper defendant, the Court proceeded to likewise overrule the exceptions insofar as the State was concerned, holding that when the State enters a contract having for its purpose a private advantage to its inhabitants and not strictly for the purpose of governing the people, it acts in a proprietary capacity and is amenable to suit without its consent. To buttress this conclusion, the Court cited the ruling in State ex rel. Shell Oil Co. v. Register of State Land Office, supra, which concerns only the question whether the equitable doctrine of estoppel is applicable to the

4. Exceptions to the jurisdiction would have been the proper plea.

State. As pointed out above, the Shell Oil case is totally inappropriate to the question of the State's immunity from suit without its consent and, while the pertinence of the finding in Begnaud v. Grubb & Hawkins on this question cannot be gainsaid, the ruling therein, which is manifestly contrary to all other jurisprudence on the subject, cannot be perpetuated.[5]

The other case cited by counsel for plaintiff, Texas Company v. State Mineral Board, supra, does not support their contention. There, the Texas Company instituted a declaratory judgment suit against the State Mineral Board for recognition of rights under certain mineral leases granted by the latter which had allegedly arisen by reason of a controversy between the State and the Federal Government concerning the paramount right or title to the leased property. The Mineral Board, taking the position that the suit was really one against the State, filed a plea to the jurisdiction of the Court, founded on the doctrine that the sovereign may not be sued without its consent. In affirming the overruling of these pleas, we held that, since the Mineral Board had issued the lease, it was the proper party defendant and that the suit was not one against the

State. We cited Begnaud v. Grubb & Hawkins as authority for our conclusion and that authority was pertinent insofar as it upheld the right of plaintiff to sue the State Mineral Board. In all other respects, however, that decision was not appropriate to the ruling in the Texas Company case as the State was not a party defendant and so there was no reason to discuss whether it could be sued without its consent.

The judgment appealed from is reversed, the plea to the jurisdiction is maintained and plaintiff's suit is dismissed.

HAMITER, J., concurs in the decree.

MOISE, Justice (dissenting).

The inventions of science have changed the map of the world; the theories and aspirations of the present demand more specifically an end to idolatry worship, because so often there is a perpetuation of old mistakes stagnating progress; the citizen is presumed to be a sovereign in fact with the entire governmental trinity his agents, and the Court is his intermediary in preventing the other departments from lessening his right of sovereignty.

The so-called sovereignty of the man has now become a catchword of politics,

5. It is to be observed that, aside from the untenable holding in the Begnaud case that the State can be sued without its consent on contracts pertaining to the leasing of State lands as it is then acting in a proprietary capacity, the conclusion that the leasing or disposal of public property is of a quasi private character may well be doubted. Conversely, it occurs to us that the leasing or sale of public lands or other State property for the advantage of the people may well be regarded as a function of government.

because of the fact that governmental administrators have always had the enterprising ambition to further extend power. Now, how can we prevent such? It is by a less devotion to legal abstractions taken from inapplicable decisions, a notice of the consequences of the acts of governmental administrators, less focusing on the definition of words, and by being imbued with a spirit of justice that what is right is right.

Some philosophic writer has said that though truth is in her nature one, eternal and indivisible, truth has many similitudes which masquerade in her form and perplex and mislead her followers, even though they are sometimes Judges.

Take the instant case. The issues are joined. The pleadings are in writing. The State contends, as strongly as the truth of holy writ, that no suit for damages can be maintained without legislative consent. Art. 3, sec. 35, of the Louisiana Constitution of 1921. That is true, but the sworn allegations of the petition show the contrary, for plaintiff clearly alleges that this suit is for the violation of a contract, and that, therefore, the aforementioned article of the Constitution does not apply. Surely, neither the State nor this Court can present, in pleadings, the plaintiff's cause of action.

The petition's sworn allegation is that the plaintiff bought from the Louisiana State Penitentiary, which is under the control of the Louisiana Board of Institutions, a substance alleged to be molasses for cattle feed.

The Louisiana Board of Institutions was specifically authorized, by statute, to make the sale and receive the price, and to have a fund to the extent of a half a million dollars for the purposes designated.

The sworn petition then shows that the feed sold was not fit for consumption; that though there was a number of pastures, it was only in the pasture in which the feed was used that plaintiff lost a number of head of valuable cattle. Silent circumstances from physical facts often have a controlling power as a means of proof that is irresistible. Silent circumstances cannot commit perjury.

A cable of circumstances is as strong as the combination of all of its strands. Proof is not a succession of links, but a combination of strands in the weaver's hands. A round peg cannot fit in a square hole. To the facts of record, the Court proceeds to apply the law which was applied to the facts in the case of State ex rel. Hart v. Burke, 33 La.Ann. 498. The facts in that case and the facts in the instant case are as far apart as the poles of the earth, which we now proceed to demonstrate by quoting from State ex rel. Hart, supra, 33 La.Ann. at pages 503–504:

"The money which is in the State treasury, from whatever source it is derived, is money which was due, which was paid, which belongs to and which is the property of, the State.

It is money which cannot be drawn from the treasury, except in pursuance of specific appropriation made by law.

"Const. of 1879, article 47, * * *

"This suit has clearly for its object the appropriation in favor of a private individual, who claims to be a creditor of the State, of money belonging to the State, which is in the State treasury, and *which the State has ordered, by constitutional provision, shall not be applied to him, but shall be used to defray the general expenses of the government."* (Italics ours.)

The sworn allegations in the instant case show that this is a suit growing out of the violation of a contract of sale, Article 2475, and that as a matter of law the seller is bound for two principal obligations— that of delivering, and that of warranting the thing sold; and, whenever the seller warrants the fitness of the thing he sells, he may be sued upon his warranty. Since the legislature authorizes the penitentiary to sell its products, it authorizes it to act in a proprietary capacity to make a contract of sale, not to deposit the proceeds in the State treasury until it has built up a revolving fund of one-half of a million dollars to buy machines for replacement and to otherwise carry on the business.

In State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519, 521, it was correctly stated that—

"The State has two classes of powers: the one legislative, public, govern-

mental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary quasi-private, conferred upon it not for the purpose of governing its people but for the private advantage of the inhabitants of the State itself as a legal personality. Wykes v. City Water Company, C. C., 184 F. 752, affirmed 9 Cir., 202 F. 357, and cases therein cited."

We must learn that to exchange a mistake for the real, a supposition for a fact, to ascertain the substance and the result of the decision for the future, is to progress.

I respectfully dissent, because the well-reasoned judgment of the district court should be affirmed.

On Motion for Rehearing

Rehearing denied.

HAMITER and HAWTHORNE, JJ., dissent.

MOISE, Justice (dissenting).

The historical background of the opinion in the Cobb case was based on the law of medieval England that "the King can do no wrong". It is because of this wrong concept that our forefathers wrote a preamble of the Constitution of the United States and promised to the citizens domestic tranquillity, a general welfare, and the blessings of liberty. In fact, in the whole instrument there is found the logical result of the liberation of a people from gov-

ernment. We settled this principle on the field of battle during the Revolution.

The capable Judge of the District Court overruled the exception ratione materiae, and under the circumstances heretofore stated this Court maintained the exception to the jurisdiction ratione materiae.

As the matter now stands we have seven judges of this Court and one of the District Court, and the count as to whether a rehearing should have been granted is equally divided. To my mind it is manifest that in such a case a rehearing should have been granted. The highest Court in the world has admonished all of us that in the exercise of high power the Court must ever be on guard lest we erect our prejudices into legal principles.

The majority in the original opinion seems to believe that we should follow the holdings of generations of long ago. Speaking only for myself, I like the form of government under which we live, the exercise and power of protection to the citizens from government, and not to depart to one that needs the conditions of another age for affirmance. In this progressive age we should not supercede common understanding and right. In his reasons for judgment, the Trial Judge crystalized these maxims of common sense—sometimes called the hand grenades of argument. He followed the jurisprudence of this Court in three cases. In the Cobb decision one of these cases has been expressly overruled and a feeble effort has been made to take the other two out of the general rules established by the decisions of this Court.

The majority decision states that there are no exceptions to the immunity of the State from suit, but, we perceive from the record in the reasons of the Trial Judge that the able Attorney General has attempted to have this action declared one in tort. Why? Because, the immunity prevails in an action in tort or when the State acts in a governmental capacity. The decisions quoted in the Cobb opinion are only authorities for the governmental rule. The exception to the general rule will be found in the case of Begnaud v. Grubb & Hawkins, 209 La. 826, 25 So.2d 606; State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519; and Texas Company v. State Mineral Board, 216 La. 742, 44 So.2d 841, 843.

Since the majority opinion states that there is no authority for the exception to the general rule, why should it then state that the ruling in the Begnaud case, supra, is manifestly contrary to all jurisprudence on this subject and that the mistake in the ruling should not be perpetuated?

Mr. Justice McCaleb, organ of the Court in the Cobb case, was the organ of the Court in the Texas case, supra, (the last decision of this Court on the subject herein involved) decided December 9, 1949. In that case we said:

"* * * to say that plaintiff is bound by the leases and yet obtains no enforceable rights thereunder (because

182 183 184 1

the State as the real party at interest is exempt from suit) *would provide an avenue for the State to escape its just obligations even though it be contracting in its proprietary capacity.* This is exactly what this Court refused to countenance in State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519 and in Begnaud v. Grubb & Hawkins, 209 La. 826, 25 So.2d 606, 608."

The above authorities cited in the Texas case, supra, bear out our contention that a rehearing should have been granted in the Cobb case, and so does the authority cited in Footnote No. 2 of the Texas case, supra. We quote this footnote:

"In the last-cited case the Court said:

" 'The argument that because ordinarily the State as a sovereignty can not be sued in its courts except with its consent is untenable. It overlooks the fact that while the State possesses legislative, public and governmental power in the exercise of which it is a sovereignty and governs its people, it also possesses proprietary and quasi private power conferred upon it not for the purpose of governing its people but for the private advantage of the inhabitants of the State itself as a legal personality. This distinction in the powers of the State was pointed out in the case of State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519. In that case this Court held that when the State executed a mineral lease it was acting in its proprietary or quasi private capacity and that having accepted the benefits under the lease it could not escape its obligations—among which was the obligation of warranty. And the Court properly allowed the assignees of the lessee of the State to call their lessors in warranty to protect their possession of the leased premises.' "

What is so striking to our minds is the fact that in the Texas case, supra, the exception to the jurisdiction ratione materiae was overruled, and in the Cobb case the exception ratione materiae was sustained. When we analyze these two cases, the rulings therein made, and the statement in the Cobb case that there is no authority for the position taken by Mr. Cobb, we cannot catch on to the combinations of the law of these two cases, because the predicate looks one way and the conclusion another, while its syllogism fails to syllogize.

We feel that all citizens should give a loyal allegiance and a faithful service to their government; that the State should set a good example and live up to all of its obligations, whether expressed or implied.

A rehearing should have been granted, because the rationale of the decision is a complete suspension of the law relating to the obligation of a contract as provided for in the Revised Civil Code of Louisiana. In

fact, in providing that immunity is absolute in all cases, the decision has overlooked the fact that while the State possesses legislative, public and governmental powers in the exercise of which it is a sovereign and governs its people, *it also possesses proprietary powers conferred upon it not for the purposes of governing its people but for the private advantage of the inhabitants of the State as a legal personality.*

The original decision has built an improvident immunity of the sovereign on a false premise, which, in the interest of the conduct of affairs in our civilization, must be recognized by such an exception as this Court has established respecting proprietary acts of the State in the cases of Begnaud, supra, Shell Oil, supra, and Texas, supra.

The Cobb decision then declares:

"It would serve no useful purpose to cite and discuss herein the numerous decisions written both before and after the Burke case with views in concordance with that authority. It suffices to refer to State ex rel. Cunningham v. Lazarus, 40 La.Ann. 856, 5 So. 289; State v. Liberty Oil Co., 154 La. 267, 97 So. 438, and Lewis v. State, 207 La. 194, 20 So.2d 917."

The decision in the case of State ex rel. Hart v. Burke, 33 La.Ann. 498, (which case the Cobb decision mainly relies on) declares:

"This suit has clearly for its object the appropriation in favor of a private

individual, who claims to be a creditor of the State, of money belonging to the State, which is in the State Treasury, and which the State has ordered, by constitutional provision, shall not be applied to him, but shall be used to defray the general expenses of the government."

The Court itself has made the matter so clear in the above quotation, that he who runs may read and in the reading understand.

The next case we shall discuss is that of Angelle v. State, 212 La. 1069, 34 So.2d 321, in which Mr. Justice McCaleb was the organ of the Court, and which is cited as authority in the Cobb decision. In express terms it declares that the action against the State was one ex delicto. The decision in that case was correct, because it *was* an action ex delicto.

The case of State ex rel. Dodd v. Tison, 175 La. 235, 143 So. 59, quoted as authority for the position taken in the Cobb decision, was an action brought against the principal of a school. The Court held— and correctly so—that the State Board of Education should be sued and that an action would not lie against the principal of the school.

In the case of State ex rel. Cunningham v. Lazarus, 40 La.Ann. 856, 5 So. 289, proceedings were taken to compel the State to pay the cost of taking testimony. Of course, the decision in that case was cor-

rect, because no proprietary act of the State was involved.

The case of State v. Liberty Oil Co., 154 La. 267, 97 So. 438, was a tax case where the taxpayer reconvened to recover tax paid under protest. As the tax had gone into the public treasury, Article IV, § 1, of the Constitution, we held that it could not be withdrawn therefrom, except by specific appropriation. That decision is correct, and it is certainly no authority for the conclusion reached in the Cobb opinion.

The original opinion then cites the case of Lewis v. State, 207 La. 194, 20 So.2d 917. This was a suit brought against the State in an action ex delicto for damages sustained while in the Central Louisiana State Hospital.

A slight reference should be made to the Articles of the Revised Civil Code, as well as the grant of power, which are incident to all private corporations.

Article 2475 of the Revised Civil Code provides:

"The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells."

We are admonished that no one can disregard an Act of the Legislature, except with its sanction and consent, and that an Article of Code adopted by the Legislature constitutes an Act of that Department of Government.

Then Article 1756 of the Revised Civil Code declares:

"An obligation is, in its general and most extensive sense, synonymous with duty."

Article 1761 of the Revised Civil Code provides:

"A contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement."

Article 1903 of the Revised Civil Code says:

"The obligation of contracts extends not only to what is expressly stipulated, · but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect."

When the Louisiana Board of Institutions or the penitentiary made this sale to Mr. Cobb, it warranted the fitness of the thing sold, and it is by law a contract between the parties, enforceable, in that under Article I, Section 6 of the Bill of Rights our Courts are open to the citizen for remedy or redress.

Now, what are the powers granted to the Board of Institutions and the penitentiary by the Legislature?

Act 350 of 1950, Section 9, LSA–R.S. 51:692.9, gives them the power to, engage in business and the necessary power to pur-

chase the necessary machinery and materials to be used in the conduct thereof, and to enter into any agreement and contract with any person, firm or corporation for the acquisition and purchase of any such supplies, equipment, tools, machinery and materials deemed necessary and expedient to conduct the production and manufacture of articles, goods, wares and merchandise contemplated by this act.

Act 156 of 1952, Section 5(f), gives the Board of Institutions the right to lease the lands owned by the State and under the control of the Board. It further provides that:

"* * * The Directors shall have the right to grant rights of way across State owned lands under its jurisdiction for the purpose of laying pipe lines, gas lines, water lines, and the transmission of electricity for power and light, and also for telephone and telegraph lines and to enter into the necessary contracts which shall provide for the payment of an adequate consideration. * * * to buy lands needed for the proper use of any institution and to sell and transfer real property belonging to the State and under the jurisdiction of the Board to any other State agency, with the approval of the Board of Institutions and the Governor."

In the doing of these things the penitentiary is given the power to carry on this business of buying and selling and all that

is necessary and incidental to the operation of this business. By Act 350 of 1950, Section 9, a revolving fund of five hundred thousand dollars was created, to be used for the purpose of purchase of manufacturing supplies, equipment, tools, machinery, and materials to be used in the conduct of the business. This fund is not deposited with the State. Only an amount in excess of the five hundred thousand dollars is to be deposited into the General Fund of the State.

Act 429 of 1954, LSA–R.S. 51:692.10, provides that the penitentiary can sell all fresh vegetables and all sugar on the open market; that the beef cattle raised by the penitentiary may be sold at public auction sales and the proceeds from such sales placed in a separate fund designated as the "Penitentiary Meat Fund". The Statute further provides that the public auction barn selling such cattle shall furnish the penitentiary a list of all of the sellers of all cattle bought by the penitentiary, and the funds in the "Penitentiary Meat Fund" may be used for these purposes, and that when this fund reaches $15,000 any excess shall be deposited in the State Treasury to the credit of the Penitentiary Fund.

Could there be possible any grant of power stronger than the above? A serious matter is involved—that under the grant of power, cattle may be sold. Under the Cobb decision, immunity is granted in all cases. Where a man purchases beef cattle for the purpose of selling to the general public, who

warrants the fitness of the animal sold? As government is for the man, his life and property, that man will not be protected.

Then again, for instance, if cotton was sold for foreign export by the penitentiary and after it had gone across the water it was found that a mass of moss was in the center of the cotton, the purchaser abroad would have no warranty from the State of Louisiana because of the Cobb decision. He would first have to go to the State for permission to sue.

With all humility we say that the Legislature has put the penitentiary in business and the Court, by the Cobb decision, has taken it out of business. Under these circumstances, who would deal, citizen or foreigner, with the State?

A rehearing should have been granted in this case, because the question for solution is now a mighty interrogation point thrown up by human progress. What will the solution be? Will it be like the pendulum of the clock—to go back and forth; or, will it be like the hands of the clock—to always go forward?

For these reasons, I respectfully dissent to the refusal to grant a rehearing.

On Second Application For Rehearing

PER CURIAM.

The rehearing applied for by plaintiff, Lloyd J. Cobb, was denied on January 16, 1956. A second petition for rehearing has been filed by his attorneys in which a rehash is made of the same contentions which are disposed of adversely to him in the Court's opinion.

 The Revised Rules of the Supreme Court of Louisiana, Rule XII, Sec. 3, provide that " * * * another petition for rehearing will not be considered unless the applicant has not theretofore applied for and been granted a rehearing or unless the court, in deciding the case on rehearing, has expressly reserved to the unsuccessful party or parties the right to apply for another rehearing." Since no such right was reserved in denying the application for rehearing, this matter is closed and there is nothing to consider.