Leonard L. **FERRARA** et al., Plaintiffs,

v.

**STATE OF LOUISIANA,** through the offices of the Honorable John J. McKeithen, Governor, et al., Defendants.

Civ. A. No. 70–639.

United States District Court,
E. D. Louisiana.

Oct. 16, 1972.

Sidney M. Bach, Bernstein & Bach, New Orleans, La., for plaintiffs.

William P. Schuler, Second Asst. Atty. Gen. of La., New Orleans, La., for defendants.

Willie D. Maynor, Baton Rouge, La., for Dept. of Public Safety.

Moise W. Dennery, New Orleans, La., R. Gray Sexton, Baton Rouge, La., for Dept. of Civil Service.

Veil David DeVillier, Eunice, La., for Louisiana Troopers' Assn.

William J. Guste, Jr., Atty. Gen., for State of Louisiana.

CASSIBRY, District Judge:

The plaintiffs, all Louisiana State Troopers, have moved to restore this case to the trial docket and to grant summary judgment in their favor on their claims for back wages allegedly due and owed to them. The defendants, various state officials and agencies, oppose these motions and move for summary judgment or, in the alternative, to dismiss the plaintiffs' suit for want of prosecution.

The plaintiffs in this case have presented an apparently simple suit for back pay allegedly due and owing to them for overtime hours worked over a four-year period.[1] The prosecution of their action, however, has foundered in a morass created in part by state law and in part by the federal doctrine of abstention, so that now, more than two years after suit was first filed here, the plaintiffs find themselves no closer to a resolution of their contentions than they were initially. When the plaintiffs first presented their action to this court, I chose to abstain until Louisiana courts could pass on a number of perplexing questions of state law that it presented.[2] I did retain jurisdiction over this cause, however, to be exercised "should any-thing prevent a prompt State Court disposition"[3] of the plaintiffs claims. For reasons set out in more detail below, I feel that the considerations motivating my initial abstention no longer apply with the same force, and have decided, therefore, to restore this case to the trial docket.

## I. BACKGROUND INFORMATION

This action was first filed in 1970 and was converted into a class action by and on behalf of a plaintiff class consisting of all active or retired state troopers who had been employed between July 27, 1966 and January 1, 1969. The complaint alleged that in 1966 the Louisiana Legislature had enacted a bill providing that state troopers should be compensated at the rate of time and a half for hours worked in excess of 40 hours per week and had appropriated money for that purpose.[4] It asserted further that each succeeding year monies had been similarly appropriated and designated as a source of payment for overtime hours worked, but that the Division of State Police of the Louisiana Department of Public Safety had not applied the legislative appropriations to their intended purpose.[5] Consequently, the complaint

1. The period spanned is July 27, 1966 to January 1, 1969.

2. Ferrara v. State of Louisiana, 322 F. Supp. 1293 (E.D.La.1970). An appeal from that ruling taken by the plaintiff was dismissed, the Court of Appeals holding that our decision constituted an non-appealable, interlocutory order. 443 F.2d 344 (5th Cir. 1971).

3. 322 F.Supp. at 1299 (Emphasis added).

4. Section 2, Act. No. 194 of the Louisiana Legislature of 1966, amended L.R.S. § 32:733 to read in part as follows:
 § 733 Administrative costs: compensation of commissioner and troopers.
 A. The commissioner is authorized to withhold as much of the title certificate fees as is necessary to defray the cost of administering . . . . [certain state programs]. The next one million one hundred thousand dollars ($1,100,000.00) of the fees collected is to be dedicated to the Department of Public Safety to be used for an additional force of one hundred state troopers and for the operation and maintenance of additional state police vehicles and equipment for said troopers. Any surplus funds are to be transferred to the state treasury to be placed in the general fund.
 After July 27, 1966, any trooper who works over 40 hours a week shall be paid at the rate of time and a half of their rate of pay.

5. La.Acts 1967, No. 8, La.Acts 1968, No. 9, and La.Acts 1969 No. 10 all contained the following language:
 All State Troopers *shall* be paid out of the funds collected by authority of Act 194 of 1966, *in priority over any previous dedication and authorized withholds therefrom,* time and one-half their rate of pay for all hours worked by them over 40 hours a week . . . . [the amount appropriated]. (Emphasis added).

averred, all of the plaintiff class had performed overtime labor pursuant to the requests of their superiors for which they had received no compensation whatsoever. The plaintiffs sought by way of relief a declaration that the overtime sums allegedly due to each of them, either as specified by the provisions of the Legislative Act of 1966, or in the alternative, as required by rules promulgated almost contemporaneously with this Act by the State Civil Service Commission [6] were legally due them. The State of Louisiana through the State Department of Public Safety, Division of State Police and the Department of State Civil Service as well as various state officials were named as defendants.

The case was in this posture when my first opinion was entered in this cause. At that time, I entertained grave doubts as to the validity of the Legislative Act of 1966 under the Louisiana Constitution,[7] and so questioned whether the plaintiffs could assert any rights under it. This important issue of Louisiana law, I felt, was best left for resolution in an appropriate state forum. As to the plaintiffs' claim that their right to overtime pay was also guaranteed under rules promulgated by the State Civil Service Commission,[8] I noted that the plaintiffs had a right under these same

---

6. See notes 7–9, *infra.*

7. La.Const., Art. 14, Sec. 15, sets up a Civil Service Commission empowered:

 * * * after public notice and public hearing, to adopt, amend, repeal and enforce rules which shall have the effect of law, regulating employment, transfers, promotion, removal, qualifications, and other personnel matters and transactions, and employment conditions and disbursements to employees, . . including, but not by way of limitation, rules (1) providing for the approval or disapproval of disbursements for all personal services in the Classified Service; . . . (6) establishing and recommending hours of work, provided that the rules establishing the hours of work shall not become effective until approved by the governor or governing body of the city, as the case may be; (7) providing for attendance records, conditions for payment of salaries, training and educational programs for persons in the State or City Services, and a uniform service rating system (including the manner in which ratings are to be used in promotions, salary increases, suspensions, and separations) ; . . .

 * * * * *

 The State and City Civil Service Commission shall adopt:

 * * * * *

 (c) Rules fixing minimum, maximum, and such intermediate rates of compensation as may be necessary, and establishing uniform pay plans and amendments thereof from time to time, according to duties and responsibilities, on the basis of recommendations of the Director after consultation by the Director with appointing authorities and the State or municipal fiscal officer, as the case may be, and resort to such other measures of investigation and research as he may deem desirable.

 *Id.,* at par. I. Arguably, *only* the Commission was entitled to specify what hours were to be regarded as overtime and to establish the rate of compensation for such hours. *See* 322 F.Supp. at 1298. *See also* notes 11–15 *infra,* and accompanying text.

8. Pursuant to the delegation of authority outlined above, the Commission adopted Commission Rules 6.25, 11.28(b), 11.29(b), and 11.29(i) which provides in relevant part:

 6.25 Compensation for Overtime Hours Worked.

 (a) In addition to his regular salary, and subject to the provisions of Rules 6.25(b), 11.28(b), 11.29(b), and 11.29(i) each employee in the Classified Service shall be compensated, for each overtime hour worked, at the rate of one and one-half times the hourly rate specified in the conversion table in the Louisiana State Personnel Manual for his monthly rate of pay.

 (b) The provisions of Sub-section (a) of this Rule shall not apply to any employee in the Classified Service,

 1. While he is occupying a position for which the current minimum rate of the pay range is $600 per month or more, unless this limitation has been removed through the application of the provisions of Rule 11.29(j).

 2. While he is performing civilian duty, under the administrative supervision of one other than his appointing authority, during an officially declared national, regional, or local emergency.

 3. While he is serving on a part-time

Rules to appeal the Department of Public Safety's refusal to pay them.[9] I thus hoped to avail myself of the administrative expertise of the Commission in order to determine whether the plaintiffs were entitled to the monies they sought. Thus, in my initial opinion I abstained from deciding the plaintiffs' claims, saying:

"Accordingly, this court will retain jurisdiction of this case while awaiting a further or final determination in the appropriate state tribunal, whether it be the State Civil Service Commission or the Courts of the State of Louisiana.

An order will be entered staying further proceedings in this court until the State Civil Service Commission and the Courts of the State of Louisiana have been afforded an opportunity to determine the issues here

presented, and retaining jurisdiction to take such steps as may be necessary for the just disposition [thereof] . . . ." [10]

## II. UPDATING THE LITIGATION

This court's expectations that state administrative and judicial tribunals would do much to clarify the issues in this case have been largely satisfied. In 1971 the Supreme Court of Louisiana in the case of Louisiana Civil Services League v. Forbes, 258 La. 390, 246 So.2d 800 (1971) construed the Civil Service Amendment of the Louisiana Constitution [11] as conferring on the State Civil Service Commission the exclusive power to fix, alter, or amend the salaries of state employees covered by that Amendment.[12] An attempt by the Legislature to act in this area by virtue of other constitutional provisions [13] was

or intermittent basis as authorized by Rules 11.2 and 11.3.
4. While he is "on-call" away from his post of duty.
5. While he is attending or traveling to or from conventions, work shops, seminars, training courses, study groups, and related activities.
6. While he is performing duty pursuant to a determination made by his appointing authority under the provisions of Rule 11.29(i).
11.28 Holidays.
(b) An employee who is required by his appointing authority to work on a day observed as a holiday in the department and area in which he is employed, other than one named in Subsection (a) of this Rule, which falls on a day within his work week as designated under the provisions of Rule 11.1(c) or Rule 11.2(b), shall be entitled only to compensatory leave benefits as authorized by Rule 11.29.
11.29 Compensatory Leave.
(b) Subject to the provisions of Rule 6.25(b)(3), 11.28(b), 11.29(d), 11.29 (i), and 11.29 (j), an employee serving in a position for which the current minimum of the pay range is less than $600 per month who is required to perform overtime duty shall, at the option of his appointing authority
1. Be credited by his appointing authority with compensatory leave equal to the number of extra hours he has been required to work, or

2. Be compensated for the extra hours of work as authorized by Rule 6.25
(i) When in his administrative judgment an appointing authority determines that overtime duty must be performed by one or more of his employees incident to national criminal insurrection, civil or criminal disobedience, or similar occurrences of an extraordinary and emergent nature which threatens or affects the peace or property of the people, he may require such employee or employees to perform overtime duty; and the provisions of Rules 11.29(a), 11.29(b), and 6.25(a) shall not apply to such duty.

9. Commission Rule No. 13.10(c) provides as follows:
13.10 Appeals to the Commission.
An appeal may be made to this Commission by
(c) Any person in the classified Service who alleges that he has been deprived of any right, discriminated against, or adversely affected by the violation of any provision of the amendment or any rule of this Commission.
10. 322 F.Supp. at 1299
11. La.Const., Art. 14, Sec. 15.
12. 258 La. at 414, 246 So.2d at 809.
13. The following three provisions were relied upon.
Salaries of public officers, whether fixed in this Constitution or otherwise,

null and void. Although the *Forbes* litigation dealt with a 1970 enactment which purported to *vary* the terms of a Commission rule, while the law here at issue *conforms* with a subsequent Commission's pronouncement, it nevertheless seems clear that the 1966 Act likewise was beyond the power of the State Legislature to adopt.[14] While counsel for plaintiffs have strenuously opposed this interpretation of the *Forbes* decision, for reasons that will be detailed below, I need not resolve that state constitutional question here.[15]

In a rather different fashion, this court has also been aided in understanding the administrative problems that this case presents. Shortly after this suit was filed, the defendant Department of Public Safety began to pay all state troopers for the overtime they worked at the allegedly proper time and a half rate. Thus no claims from these plaintiffs for overtime pay have arisen within the last two years. By the Commission's own Rules, all claims antedating that period are now prescribed.[16] Since the plaintiffs did not seek an administrative determination of the validity of their claims at any time prior or subsequent to this court's earlier opinion, I am now deprived of the Commission's expertise in this matter.[17] This omission, while regrettable, is mitigated somewhat by the fact that the State Department of Public Service has admitted that "State Troopers did perform overtime work and . . . further . . . that all State Troopers did perform such overtime work. . . ."[18] Thus I feel confident that formerly troubling questions of state law and state administrative procedure have been considerably simplified and substantially explicated since this case was last before me, and would no longer prove to be formidable barriers to the adjudication of the plaintiffs' rights.

These developments alone would not normally serve as an adequate basis for dissolving my stay of all proceedings here, since one of the primary purposes

may be changed by vote of two-thirds of the members of each House of the Legislature.
La.Const., Art. 3, Sec. 34.
 All existing laws relating to the State or City Civil Service System are continued in force insofar as not in conflict herewith, subject to the power of the Legislature to amend or repeal such laws or adopt new laws, provided said amendments or new laws are supplementary and not in conflict herewith.
La.Const., Art. 14, Sec. 15(P)(6).
 The exercise of the police power of the State shall never be abridged.
La.Const., Art. 19, Sec. 18.

14. While the 1966 Act is in rough agreement with Commission Rules which became effective just a few days after the Act did, the parallel is by no means complete. The Commission Rules are much more detailed and contain numerous exceptions to the time-and-one-half formula adopted by the Legislature. See notes 4 and 8, *supra*. Moreover, *at the time the Legislature acted*, their pronouncement was *inconsistent* with the prevailing Department of Public Safety practice of having state troopers work a six-day, forty-eight hour, straight time week.

15. See text at page 273, *infra*.

16. Commission Rule No. 13.12 provides in pertinent part
 13.12 Delay for Making Appeal.
 (a) No appeal shall be effective unless a written notice complying with the requirements of Rule 13.11 is received in the office of the Director in the Department of State Civil Service at Baton Rouge, Louisiana.
 \* \* \* \* \*
 2. Within thirty (30) calendar days after the date when appellant learned or was aware that the action complained of had occurred when no written notice is required by these Rules, or if required, was given tardily or not at all.
 \* \* \* \* \*
 (c) No appeal shall lie against any action following the expiration of three hundred sixty-five (365) calendar days from the date on which it occurred.

17. Whether this failure to resort to administrative remedies is fatal to the plaintiffs' claim is a matter on which this court intimates no opinion.

18. Defendant Louisiana Department of Public Safety's Answer to Interrogatories, Question III.

of the doctrine of abstention is to avoid the unnecessary decision of federal constitutional questions. , In a typical case I would continue to abstain so that Louisiana courts might resolve the plaintiffs' claims through resort to state law, leaving the plaintiffs the right to reserve. their federal claim for decision here, should they fail to obtain relief in the state courts. National Education Ass'n v. Lee County Board of Public Instruction, 467 F.2d 447 (5th Cir. 1972); England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440 (1964). This case, however, is anything but typical. Two distinct features of this litigation make it inappropriate to compel the plaintiffs to resort further to state courts. First, the plaintiffs have found it almost impossible to get any meaningful state court relief because of the doctrine of sovereign immunity as it has developed in the State of Louisiana. Second, as will appear below, the state law claims of the plaintiffs are completely overshadowed by their federal claim.

A. *The Doctrine of Sovereign Immunity*

 The Louisiana Constitution, Article 3, Section 35, as amended provides in part:

The Legislature is empowered to waive, by specific or general laws or resolutions, the immunity from suit and from liability of the state, and of . . . departments, commissions, . . . and other public or governmental bodies.

The doctrine of sovereign immunity there referred to has been described by the Supreme Court of Louisiana as "inherent in the most elementary concepts of governmental sovereignty; . . . implicit in our constitution and . . . repeatedly recognized by our courts." [19] When the State itself is a defendant, "there are no exceptions" [20] to the doctrine. This immunity extends to the officers of the State [21] and to any state agency unless it is endowed by the statutes creating it with an existence separate from that of the state by being empowered to "sue or be sued" in its own name. [22] Since none of the agencies sued here are of this variety, all of the defendants in this case are, under well-settled Louisiana jurisprudence, immune from any suit to which the State does not consent, [23] provided timely and proper objection is made. [24]

The method by which the State's consent to suit is gained is suggested by the provisions of Article 3, Section 35, quoted above. Apparently the customary procedure is to file a concurrent res-

19. Weinstein, Bronfin & Heller v. LeBlanc, 249 La. 936, 942, 192 So.2d 130, 132 (S. Ct.La.1966).

20. Cobb v. Louisiana Board of Institutions, 229 La. 1, 3, 85 So.2d 10, 11 (S.Ct.La. 1955).

21. Weinstein, Bronfin & Heller v. LeBlanc, 249 La. 936, 945, 192 So.2d 130, 134 (S.Ct.La.1966).

22. Reymond v. State Dept. of Highways, 255 La. 425, 231 So.2d 375 (S.Ct.La. 1970); Pierce v. Fidelity & Casualty Co. of New York, 205 So.2d 831 (La.Ct.App., 1967).

23. Grimble v. Avoyelles Parish Police Jury, 212 So.2d 496, 498 (La.Ct.App. 1968) contains the following statement:
 [A] state official or an employee of a state agency may bring suit against that agency (notwithstanding its gen-

eral immunity to actions by citizens) to recover from that agency salaries owing him which were wrongfully or unlawfully withheld.

This broad language is simply not supported by the authorities cited in its behalf, and the case seems to stand alone in this regard. The decision, however, appears to be correct on its facts. *See* La. Const. Art. 19, Sec. 26.

24. One peculiar aspect of Louisiana's doctrine of sovereign immunity is that while it apparently may be presented by the parties by way of a plea of lack of jurisdiction at any time prior to a final judgment on the merits—much as a plea of lack of subject matter jurisdiction in federal practice—the court is not free to raise the issue *sua sponte. Compare* City of Natchitoches v. State of Louisiana, 254 La. 463, 223 So.2d 870 (S.Ct.La.

olution in each house of the legislature, seeking waivers of immunity from process and from liability from the State. Without such authorization, the plaintiffs are vulnerable to an interposition of a plea of want of jurisdiction by the defendants, even after the court has reached a final decision on the merits.[25] Thus, in short, the plaintiffs may not bring their action in Louisiana courts, unless they first receive the permission of the Louisiana Legislature to do so, with any assurance that those courts will be able to grant them any relief.

█ The plaintiffs have sought such legislative authorization, and despite the defendants' assertions to the contrary, I find that they have been reasonably diligent in their efforts in this regard. Nevertheless, the special legislation which they introduced to authorize their suit was never reported out of committee, and can not now be expected to be acted upon before the next legislative session. The precise reason for this lack of attention to their request has not been revealed to the plaintiffs, so that they are presently unable to fashion a more effective course of action. I feel that delays measured literally in years[26] in the vindication of federal rights allegedly arising directly under the Constitution of the United States, if tolerated, could present a serious threat to the administration of justice.[27] Consequently, I believe that I should resume active supervision of this suit at this time.

### B. The Primacy of the Federal Question

█ My conviction that a federal forum is now the proper one in which to try this suit is greatly strengthened by my belief that the plaintiffs' state claims are very weak indeed. Their administrative remedies before the Civil Service Commission are prescribed,[28] and, after *Forbes*, the constitutionality of the 1966 Act is extremely questionable.[29] Their federal claim, on the other hand, has a far more plausible basis. It is bottomed on a purported federal constitutional right to recover in quantum meruit for services actually performed for the State in good faith and in the reasonable belief that they would be paid for at the rate specified both in state statutes and in administrative regulations having the force of law. While a full discussion of the merits and demerits of this position would be premature at this point, it appears to me that the 1966 statute would not have to be constitutional in order for the plaintiffs to recover under such a theory. Rather its validity or invalidity would be only one factor contributing to the reasonableness of the plaintiffs' expectation that their overtime services were compensable in the manner they allege. As I pointed out in my first opinion, "There is no doubt that the plaintiff may choose a federal forum to assert his federal rights even though a state remedy may be available."[30] To allow the

1969) *with* City of Natchitoches v. State of Louisiana, 221 So.2d 534 (La.Ct.App. 1969) (lower court ruling that state could be sued without its consent found "palpably erroneous," but decision nevertheless affirmed since only holdings appealed from were correct).

The plaintiffs in this case thus are faced with a sort of Russian roulette situation. Perhaps the defendants will interpose the fatal plea and perhaps not. This court feels that such a contingency is sufficiently prejudicial to the plaintiffs as to warrant federal relief, and that the fact that their suit is not absolutely barred is not of controling importance.

25. The defense could be raised for the first time on appeal. *See* note 24, *supra*.

26. It now appears that no special bill authorizing the plaintiffs' action could possibly be forthcoming from the Legislature before its 1973 session, and no appropriation to pay any judgment the plaintiffs might finally receive would be feasible before the next fiscal session of the Legislature in 1974.

27. The court wishes to stress that the plaintiffs' claims are as yet only allegations. No expression of opinion on the eventual outcome of this litigation is intended.

28. *See* note 16, *supra*.

29. *See* notes 13–14, *supra*, and accompanying text.

30. 322 F.Supp. at 1299.

1ow emasculated state claims to control he timing of the resolution of the sub-tantial federal question remaining in his case would be to permit the allegori-:al tail to wag the dog.

## III. THE PRESENT MOTIONS

■ This extensive review of the tortured course of this litigation brings me at last to the motions of the parties which triggered this opinion. The plaintiffs, frustrated in their efforts to obtain legislative authorization of their suit, urged this court to restore this case to its docket and then to grant summary judgment in their favor. The defendants opposed these motions, urging this court to continue to abstain, or in the alternative, to either dismiss the plaintiffs' suit for want of prosecution or to render summary judgment for the defendants. My disposition of these motions, and my reasons therefor, should generally be obvious from this opinion, but several points require further explication here. The defendants' motion to dismiss for want of prosecution was basically predicated on their claim that Louisiana law did not require the plaintiffs here to obtain permission from the Legislature to bring this suit against the State. Consequently, the defendants argued, the plaintiffs' efforts in this respect represented dilatory evasions of my earlier mandate that they expeditiously present their claims to state administrative and judicial forums for resolution. I disagree, however, with the defendants' interpretation of the governing Louisiana precedents, and find that the plaintiffs' state law claims could have been pretermitted at any time by a plea of sovereign immunity made by the defendants, unless legislative dispensation to bring the suit were first obtained. Because I so find, I further find that the plaintiffs' attempts to secure such legislation prior to filing suit in state court did represent substantial

compliance with my earlier decision.[31] Consequently the defendants' motion to dismiss for want of prosecution is denied.

■ Because factual issues exist as to whether the Legislature did in fact appropriate funds for the purposes specified by plaintiffs and whether the plaintiffs' reliance on said legislation was reasonable and in good faith, and further, because this case's current procedural posture has prevented substantial questions of law from being fully presented to the court, summary judgment for either plaintiffs or defendants would be improper, and the same is hereby denied to each movant.

Finally, for the reasons stated in section II of this opinion the plaintiffs' motion to dissolve my earlier stay and to restore this case to the trial docket is granted and the defendants' contrary request denied.

---

31. Defendants also argue that the plaintiffs' efforts to secure the requisite legislation were themselves half-hearted and

ineffectual. The court, however, finds this contention to be without merit.