O’NIELL, Chief Justice.
 

 Two citizens alid taxpayers, namely, Alphonse Peck, residing iii Lafayette, and O. Dolan Ricks, residing in Baton Rouge, brought this suit against the State Treasurer, the State Auditor, the Chairman of the Highway Commission or Director of the Department of Highways, and against the Board of Liquidation of the State Debt. The object of the suit is to compel the State Treasurer to transfer to the credit of the account of the Department of Public Welfare a certain fund of $1,-168,622.16, which the State Treasurer placed to the credit of the General Highway Fund on January 29, 1941. To that end the plaintiffs prayed for a mandatory injunction, and they prayed also for a preliminary injunction to prevent meanwhile the spending of any part of the fund. The plaintiffs contend that Act 141 of 1940, under authority of which the State Treasurer credited the $1,168,622.16 to the account of the General Highway Fund, is unconstitutional, and that the 5th section of Act 87 of 1936, which the Legislature by the act of 1940 undertook to amend, requires the State Treasurer to credit the $1,168,622.16 to the account of the Department of Public Welfare. The plaintiffs prayed, not only that Act 141 of 1940 should be adjudged unconstitutional, but also that a certain resolution of the Board of Liquidation of the State Debt, dated November 29, 1940, purporting to direct the State Treasurer and the State Auditor to place the $1,168,622.16 to the credit of the General Highway Fund, should be declared unconstitutional, and that. Act •73 of 1936, so far as it purported to give authority to the Board of Liquidation, of the State Debt to suspend any laws providing for the appropriation or dedication of public funds, should be declared unconstitutional. The question of validity of the resolution of the Board of Liquidation of the State Debt, and the question of constitutionality of Act 73 of 1936, so far as it purported to authorize the board to adopt the resolution, have passed out of Ihe case, because the State Treasurer proved, and it is not disputed, that he considered the resolution of the Board of Liquidation as being unconstitutional and of no effect, and that he therefore refused to obey the resolution, and acted only upon the opinion of the Attorney General that the act of 1940, which was ratified by an amendment of the Constitution in November 1940, was made valid from the date on which all acts passed by the Legislature in the regular session of 1940 came into effect; i. e. July 31, 1940. The defendants in their pleadings, therefore, did not rely upon the resolution of the Board of
 
 *66
 
 Liquidation of the State Debt, and the judge of the district court found it unnecessary to decide or consider the question of validity of the resolution, or the question of constitutionality of Act 73 of 1936. The judge, after hearing the evidence on a rule on the defendants to show cause why the preliminary injunctions should not be granted, gave judgment for the plaintiffs, making the rule absolute, enjoining the Director of the Department of Highways from spending or withdrawing any part of the $1,168,622.16, enjoining the State Auditor from issuing and the State Treasurer from honoring any warrant or check for any part of the $1,168,622.16, and commanding them forthwith to transfer the fund of $1,168,622.16 to the credit of the account of the Department of Public Welfare. The defendants are appealing from the judgment.
 

 The question to be decided is whether Act 141 of 1940 was ratified by the constitutional amendment adopted in NovemT ber, 1940, 'pursuant to Act 373 of the regular session of that year, and if so whether the ratification had the retroactive effect of making Act 141 valid from the date on which all laws passed at that session took effect, July 31, 1940, or from the date on which the constitutional amendment went into effect, December 6, 1940. There is no dispute about the facts of the case, so far as they are relevant and material. By Act 87 of 1936 a tax of two cents per gallon was levied on all gasoline or motor fuel sold, used or consumed in the state for domestic purposes. In the 5th section of the act it was provided that the State Treasurer should place the avails of the tax to the credit of a special fund, to be apportioned to the City of New Orleans and the parishes throughout the state in the proportion which the amount collected in New Orleans and in each parish would bear to the total amount collected throughout the state. By Act 19 of 1938 the Legislature amended the 5th section of the act of 1936 by dedicating one-half, or one cent, of the two-cents tax to the Department of Public Welfare, to be used for the system of social security and public welfare services. By Act 141 of the regular session of 1940 the Legislature amended again the 5th section of the act of 1936, by providing that the State Treasurer should place to the credit of the General Highway Fund, created by Section 22 of Article VI of the Constitution, the one cent, which had been dedicated to the Department of Public Welfare by Act 19 of 1938, out of the two-cents tax which had been levied by the act of 1936. This dedication of one cent of the gasoline tax to the General Highway Fund was declared in the act of 1940 to be for the construction and maintenance of the system of state highways and bridges and for such other purposes as were provided for in subsection (a) of Section 22 of Article VI of the Constitution. That subsection, at the time of the adoption of the act of 1940, made this provision among the sources of revenue for the General Highway Fund, viz:
 

 “On gasoline, benzine, naphtha and other motor fuels, as defined by law, when sold, used or consumed in the State of Louisiana, there shall be levied a tax not to exceed
 
 *67
 
 four (4c) cents per gallon, to be collected as prescribed by law.”
 

 There appeared to be, therefore, a limit of four cents per gallon upon the rate of the gasoline tax that should be levied for the General Highway Fund; and all of the tax of four cents per gallon was levied and dedicated to the General Highway Fund by Act 6 of the Extra Session of the Legislature of 1928. That statute was amended by Act 8 of 1930 and by Act 16 of 1932 and Act 34 of 1934, but the rate of the tax was never reduced; hence the maximum rate which the Legislature was authorized by subsection (a) of Section 22 of Article VI of the Constitution to dedicate to the General Highway Fund was already levied and dedicated to that fund by Act 6 of the Extra Session of 1928, and remained so dedicated at the time when the Legislature, by Act 141 of 1940, undertook to transfer from the Department of Public Welfare to the General Highway Fund one-half of the two-cents tax which had been levied by Act 87 of 1936, and which had been dedicated to the Department of Public Welfare by Act 19 of 1938. It was so obvious that the constitutionality of Act 141 of 1940 would be questionable, if in fact the act was not obviously unconstitutional, because of its undertaking to dedicate to the General Highway Fund a tax in excess of the constitutional limit of four cents per gallon, that the Legislature, in the regular session of 1940, adopted a joint resolution proposing an amendment of subsection (a) of Section 22 of Article VI of the Constitution, so as to allow the dedication to the General Highway Fund of an additional tax of one cent per gallon on gasoline and other motor fuel. The joint resolution which was House Bill 28 and which became Act 373 of 1940, was adopted finally by both Houses on July 4, 1940; and Act 141 of that session, which was House Bill 504, was passed finally by both Houses on the next day, July 5, 1940. In Act 373 of 1940 the Legislature proposed first to amend subsection (a) of Section 22 of Article VI of the Constitution by reducing the annual license tax on automobiles from $15 to $3. That tax and the four-cents gasoline tax were the main sources of revenue for the General Highway Fund; and the sales tax, which had been levied by Act 2 of 1938, was the mam source of revenue of the Department of Public Welfare. Act 2 of 1938, levying the sales tax, was repealed by the Legislature in the regular session of 1940, by Act 82 of that session. And the Legislature then, in that session, made an appropriation from the State’s General Fund to provide for the expenditures to be made by the Department of Public Welfare, and in the general appropriations bill, Act 44 of 1940, item
 
 82,
 
 appropriated
 
 $3,750,000,
 
 or $1,875,000 for each of the fiscal years, 1940-41 and 1941-42. That took care of the Welfare Department’s loss of the sales tax and of the half of the gasoline tax, transferred to the General Highway Fund by Act 141 of 1940. And, in order to make this transfer of the one-half of the gasoline tax to the General Highway Fund constitutional, or to insure its constitutionality, the Legislature proposed by Act 373 of 1940 to raise the limit on the rate of the
 
 *68
 
 gasoline tax that could be dedicated to the General Highway. Fund, from four cents to five cents per gallon. There was no constitutional limitation on the rate of taxes that might be levied on gasoline or other motor fuel for other purposes; the limit of four cents per gallon, prescribed in subsection (a) of Section 22 of Article VI of the Constitution, was merely the limit of the rate which might be dedicated to the General Highway Fund. In the joint resolution proposing the amendment of subsection (a) the Legislature included also a proposed amendment of subsection (g), which is not pertinent to this case. The proposed amendment of subsection (a) was made by adding another paragraph, immediately after the paragraph in which was levied the “tax not to exceed four (4c) cents per gallon”, thus:
 

 “On gasoline, benzine, naphtha and other motor fuels, as defined by law, when sold, used or consumed in the State of Louisiana, there shall be levied an additional tax not to exceed one cent (lc) per gallon to be collected as prescribed by law.”
 

 That paragraph is an exact copy of the paragraph immediately preceding it, except that in the new paragraph the phrase “an additional tax not to exceed one cent (lc)” is substituted for the phrase in the preceding paragraph “a tax not to exceed four (4c)”.
 

 At the end of the proposed amendment, in Act 373 of 1940, the Legislature added the following paragraph, which the defendants rely upon as a ratification of Act 141 of 1940, viz:
 

 “Any legislation adopted at the Regular Session of the Legislature of 1940, based upon this proposed amendment to Article VI, Section 22, Sub-sections (a) and (g), shall be validated and ratified by the adoption of this amendment.”
 

 The constitutional amendment, proposed in Act 373 of 1940, was approved by the electors at the November election and took effect on December 6, 1940. The regular session of the Legislature of that year adjourned on July 11, and, according to Section 27 of Article III of. the Constitution, the laws enacted at that session went into effect at twelve o’clock, noon, on the twentieth day after the session adjourned, or on July 31, 1940. The gasoline tax of one cent per gallon received by the State Treasurer between the 31st day of July and the 6th day of December, 1940, amounted to $1,-168,622.16. That is the fund in contest in this suit.
 

 The plaintiffs contend, first, that the amendment of subsection (a) of Section 22 of Article VI of the Constitution did not ratify Act 141 of 1940, because the act is not referred to specifically in the amendment, and, second, that if the constitutional amendment did ratify Act 141 of 1940 the ratification did not have a retroactive effect, but gave validity to Act 141 of 1940, from the date when the constitutional amendment went into effect, December 6, 1940. It is argued that the declaration in the constitutional amendment, “there shall be levied an additional tax not to exceed one cent (lc) per gallon”, merely authorized the Legislature to levy the additional tax, but did not au
 
 *69
 
 thorize the Legislature to dedicate to the General Highway Fund any portion of any tax already levied and dedicated to another fund. We must bear in mind, though, that subsection (a) of Section 22 of Article VI of the Constitution is devoted exclusive to the subject of the sources from which the General Highway Fund shall be derived. The section begins with the declaration : “The General Highway Fund shall be derived from the following sources Therefore, the declaration in the amendment to subsection (a), that there shall be levied an additional tax not to exceed one cent per gallon on gasoline and other motor fuel, means that the avails of this additional tax shall belong to the General Highway Fund. The Legislature, by transferring to the General Highway Fund one-half of the two-cent tax that had been levied and dedicated to the Department of Public Welfare, avoided the levying of an additional tax, and at the same time accomplished the purpose of the amendment of subsection (a) of Section 22 of Article VI of the Constitution. The important part of this amendment, however, adopted pursuant to Act 373 of 1940, is the ratifying clause, declaring that any legislation adopted at the regular session of the Legislature of 1940 based upon this proposed amendment of - subsection (a) of Section 22 of Article VI shall be validated and ratified by the adoption of this amendment. The phrase “based upon this proposed amendment” means dependent upon this proposed amendment for its validity. To say that Act 141 of 1940 was not based upon the proposed amendment is very near if not quite the same as to say that Act 141 of' 1940 was not dependent for its validity upon the proposed amendment. Which cannot be said without conceding that Act 141 of 1940 was valid at the time when it was enacted. There is no doubt whatever that the purpose of the amendment of subsection (a) of Section 22 of Article VI of the Constitution, and the purpose particularly of the ratifying clause, was to validate- and ratify Act 141 of 1940, not merely from the daté when the amendment would' go into effect but from the date when all of the acts passed by the Legislature at its' regular session of 1940 went into effect. If the Legislature in its session of 1940 had intended to enact a law which would increase by one cent per gallon the gasoline tax to be dedicated to the General Highway Fund on the day on which a proposed constitutional amendment would go into effect, there would have been no necessity for enacting a statute, in addition to proposing a constitutional amendment, on the subject. A constitutional amendment dedicating another one-cent tax to the General Highway Fund would have served the purpose.
 

 It was decided in.the case of Fontenot v. Young, 128 La. 20, 54 So. 408, 412, that a ratifying clause in a constitutional amendment, purporting, in general terms, to ratify any legislation adopted at a given session of the Legislature, on a given subject, was sufficient to ratify any statute described in the general terms of the amendment, and, that the amendment had the retroactive effect of validating the statute from the date on which it would have gone
 
 *70
 
 into effect but for its being then unconstitutional. In that case the Legislature had enacted Act 15 of 1910, purporting to create from a part of the Parish of St. Landry the Parish of Evangeline, and declaring that one of the four representatives ■of the Parish of St. Landry, in the Legislature, should represent the Parish of Evangeline. In the same session the Legislature adopted a joint resolution, which became Act 75 of 1910, proposing an amendment of the Constitution and purporting to ratify Act 15 of 1910. The latter act was attacked by Fontenot and others on the ground that some of its provisions, and particularly those relating to representation in the Legislature, were violative of certain provisions in the Constitution of 1898. The plaintiffs contended that the constitutional apiendment should be held to apply only to those portions of Act 15 of 1910 that made provisions for representation in the Legislature; and that the ratifying clause was not so specific as to ratify Act 15 of 1910, and, in the alternative, that if the ratifying clause did ratify Act 15 of 1910 the ratification, did not have a retroactive effect. The ratifying clause in that amendment was in these words:
 

 “That any act passed by the General Assembly of the State of Louisiana at its ■session in 1910 creating a new parish or parishes and assigning a representative to each is hereby ratified and confirmed.”
 

 It was held that that ratifying clause, notwithstanding it did not refer specifically to Act 15 of 1910, had the effect of curing the infirmities in the act, if any there were, and made the act constitutional from the beginning. In the course of the opinion it was said:
 

 “It is objected that so to construe the amendment as to make Act No. 15 effective from the date of its promulgation would be to violate the canons of construction which discountenance the giving to Legislation a retroactive effect, or such effect as would bring a constitutional' amendment into conflict with the general policy of the Constitution amended. No one doubts, however, that retroactive laws may be passed, so long as they do not impair the obligations of contracts or devest vested rights, and no one can deny that when such a law is passed by competent authority, and the intention that it shall operate retroactively is clearly expressed, it becomes the duty of the courts to construe and apply it according to the intention of the maker. In the instant case the ratification and confirmation of Act No. 15 of 1910 can mean nothing else than that its infirmities, if any existed, are cured, and that it is to be regarded as having been constitutional from the beginning; and we do not find that any contractus thereby impaired or vested right devested.”
 

 The doctrine of that decision is referred to with approval in the opinion handed down today in the case of Alphonse Peck v. City of New Orleans et al., La. Sup., 5 So.2d 508. And in the opinion rendered in that case the court recognizes the distinction between a ratifying clause in an amendment of the Constitution, such as we have in this case, and a ratification which results merely as a logical consequence of an amendment made subsequent
 
 *71
 
 to the enacting of an enabling act, as provided in Section 2 of Article 21 of the Constitution. It is observed in that opinion that, although enabling acts, enacted in anticipation of an amendment of the Constitution, take effect only when the amendment itself takes effect, ratifying clauses in constitutional amendments such as we have in this case necessarily have a retroactive effect, because they expressly refer to what has been done already. It is conceded in the brief for the plaintiffs in this case that the ratifying clause in this amendment of' subsection (a) of Section 22 of Article VI of the Constitution was not an attempt to proceed according to Section 2 of Article XXI, which provides:
 

 “Whenever the Legislature shall submit amendments to this Constitution, it may, at the same_ session, pass laws to carry them into effect, to become operative when the proposed amendments have been ratified.”
 

 In the written opinion of the judge of the district court in this case he cites Pecot v. Police Jury, 41 La.Ann. 706, 6 So. 677, Succession of Parham, 51 La.Ann. 980, 25 So. 947, 26 So. 700 and Cassard v. Tracy, 52 La.Ann. 835, 27 So. 368, 49 L.R.A. 272, and in addition to these cases the attorneys for the plaintiffs cite Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867, and Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184. Those decisions maintain merely that every law, whether it be a statute or an amendment of the Constitution, is presumed to have only a prospective effect unless the intention that it shall have a retrospective effect is clearly expressed or necessarily inferred. But the court was not dealing with an express ratification in any of those cases. The expression in the ratifying clause in this case is that any legislation adopted at the regular session of the Legislature of 1940, based upon this proposed amendment, shall be validated and ratified by the adoption of this amendment. The words “validate” and “ratify”, in the sense in which they are used in this amendment, are almost if not quite synonymous terms, meaning, according to Webster’s New International Dictionary, to sanction, to confirm or affirm, to declare valid. See, also, 36 Words and Phrases, Perm. Ed. p. 138 et seq., and 44 Words and Phrases, Perm. Ed., pp. 7 and 8. In support of the authority to make amendments of the Constitution retroactive in their effect, see Robinson v. Askew, decided by the Supreme Court of South Carolina, 129 S.C. 188, 123 S.E. 822. See also Vorbeck v. City of Glencoe, by the Supreme Court of Minnesota, 206 Minn. 180, 288 N.W. 4; McKenzie v. Mukilteo Water District, by the Supreme Court of Washington, 4 Wash. 2d 103, 102 P.2d 251; and, particularly, Boyd v. Olcott, Governor, 102 Or. 327, 202 P. 431 loc. cit. 448, where the Supreme Court of Oregon said that “all acts coming within the class designated by the [constitutional] amendment were confirmed.”
 

 The attorneys for the plaintiffs cite Cooley’s Constitutional Limitations, 8th Ed., Vol. 1, and quote from the chapter on The Construction, of State Constitutions Chap. IV, the pronouncement that a Constitution should have effect only prospectively “unless the words employed show
 
 *72
 
 . a clear intention that it should have a retrospective effect”. The author, in that chapter, does not deal with constitutional amendments declaring that any statute of a given class or description, already enacted at a given session of the Legislature, shall be ratified by the constitutional amendment. Such a ratifying clause refers to the past, and therefore has a retroactive effect. The phrase “shall be ratified” means, of course, that the ratification shall occur if and when the amendment of the Constitution is adopted; but ' that does not mean that when the ratification does occur it shall not have a retroactive effect. The Legislature might, of co'urse, submit a proposed amendment with a ratifying clause so worded that it would have only a prospective effect; but the proposed amendment in this instance was not so worded. Our conclusion is that the ratifying clause in the amendment of subsection (a) of Section 22 of Article VI of the Constitution, which amendment was adopted pursuant to Act 373 of 1940, validated Act 141 of 1940 as of the date when the acts passed at that session of the Legislature went into effect; that is, July 31, 1940.
 

 When the defendants answered the rule to show cause why the preliminary writs of injunction should not be granted in this case, they first filed several exceptions to the rule, in their proper order and with appropriate protestations. The . judge overruled the exceptions to the jurisdiction of the court, before hearing evidence on the merits of the rule, and there- ■ after overruled the other exceptions. Having come to the conclusion that the plaintiffs are not entitled to the writs of injunction and that the rule to show cause should be dismissed for the reasons which we have given, we find it unnecessary to consider the defendants’ exceptions, except the exceptions to the jurisdiction of the court. The exception to the jurisdiction ratione materiae was pleaded only so far as the suit was a suit against the Board of Liquidation of the State Debt, the contention of the defendants being that to that extent the suit was a suit against the State. The judge ruled correctly that the. exception ' was disposed of when it developed that the Board of Liquidation of the State Debt was not a necessary or proper party to the suit, if in fact there was ever any merit in the exception. The exceptions to the jurisdiction ratione personae were not well founded because the official domicile of the defendants is in the Parish of East Baton Rouge, where the suit was brought against them in their official capacity. The exceptions of no cause or right of action were pleaded in defense of the suit itself, and not in response merely to the rule to show cause why a preliminary injunction should not be granted. For that reason the judge withheld his ruling on the exceptions of no cause or right of action pending his hearing of evidence on the.rule to show cause. The exception to the right or capacity of the plaintiffs, as citizens and taxpayers, to bring this suit and. to stand in judgment was overruled ón the authority of Graham v. Jones, 198 La. 507, 3 So.2d 761. The writer of this' opinion
 
 *73
 
 has some doubt that the plaintiffs, as citizens and taxpayers, had the right to bring this suit; but a majority of the members of the court are of the opinion that the ruling of the judge in that respect is correct ; hence it is affirmed.
 

 This suit was not put at issue except by the answer of the defendants to the rule to show cause why a preliminary injunction should not be granted. The judgment from which the defendants are appealing purports merely to make the rule absolute and to grant a preliminary injunction; and even where the injunction is declared in the judgment to be a mandatory injunction it is called a preliminary injunction. The judgment, virtually, would have disposed of the case finally in favor of the plaintiffs if the defendants had not appealed. And the decree which we shall render, reversing the judgment appealed from, and dismissing the rule to show cause why a writ of injunction should not be granted, will virtually end the suit in favor of the defendants; because there will be nothing left to be done except for the defendants to answer the plaintiffs’ petition and for the judge to render a final judgment rejecting their demand. For that' purpose we are obliged to remand the case.
 

 The judgment appealed from is annulled; the rule on the defendants to show cause why a writ of injunction should not be granted is dismissed at plaintiffs’ cost; and this case is ordered remanded to the district court for such further proceedings as may be necessary and consistent with the opinion just rendered by this court.