138 So.2d 104

TERREBONNE PARISH SCHOOL BOARD

v.

ST. MARY PARISH SCHOOL BOARD
and Texaco, Inc.

No. 45797.

Dec. 29, 1961.

Rehearing Denied Feb. 2, 1962.

Aycock, Horne, Caldwell & Coleman, Jack C. Caldwell, Franklin, for defendant-applicant.

Claude B. Duval, Houma, for plaintiff-respondent.

McCALEB, Justice.

This action was brought by the Terrebonne Parish School Board against the St. Mary Parish School Board and Texaco, Inc., to recover proceeds from a mineral lease entered into by the two defendants and, in the alternative, to have the lease cancelled. The lease covered a Sixteenth Section of land located in St. Mary Parish, which was set aside for public school purposes by the federal land grants of 1806 and 1811. The plaintiff's claim to a portion of the revenue therefrom is based upon Article 12, Section 18 of the Louisiana Constitution, as amended by Act 743 of 1954, wherein it is provided:

"* * * The parish school boards of parishes within which there lies a township or any portion of a township containing a Sixteenth Section or any portion of a Sixteenth Section shall be entitled to a portion of the proceeds derived from the sale of said Sixteenth Section or any portion thereof, including the sale of timber thereon and revenues arising from mineral leases, contracts, royalties and all other revenues arising from said sales, leases and contracts heretofore made or which may hereafter be consummated and said proceeds and revenues shall be credited to the parish school boards in which such townships are situated in proportion to the percentage of the townships lying in each parish * * *".

The plaintiff alleged in its petition that a portion of the township in which the leased Sixteenth Section is situated lies within Terrebonne Parish.

The defendant, St. Mary Parish School Board, filed exceptions to the jurisdiction ratione materiae and ratione personae. The exceptions were based on an amendment added as a new section to Article 19 of the Constitution in 1956 which withdraws the consent of the State to suits against certain of its agencies and subdivisions. This amendment, which is Article 19, Section 26 of the Constitution, reads in part:

"The following named commissions, boards, bodies or municipal corporations are and shall be considered special agencies of the State of Louisiana:

"* * * (7) The parish school boards of each of the parishes of the State of Louisiana, * * *

"The consent of the State of Louisiana to suits or legal proceedings against any of the above listed special agencies, (however heretofore given) is hereby expressly withdrawn and no such suit or proceeding shall be permitted ex-

cept as provided in this section. * * * There is expressly excepted from the foregoing, suits for the enforcement of contracts entered into by any of the special agencies or for the recovery of damages for the breach thereof. Additionally, the Legislature of Louisiana may, in individual cases, by appropriate act grant to any party showing just and reasonable cause the right to sue any of these special agencies, in compliance with Section 35 of Article III of this Constitution. * * *"

It was St. Mary's contention that it was not amenable to suit under this Section unless permission to sue be first obtained from the Legislature. The exceptions were overruled by the district judge and St. Mary applied to the Court of Appeal, First Circuit, for supervisory writs. The writs were granted and the Court of Appeal found that the district court was correct in overruling the exceptions and the cause was remanded. The Court of Appeal deduced that Section 26 of Article 19 does not envision that the sovereign state itself was to be precluded from instituting suit against one of its agencies; that, in bringing this suit to enforce its constitutional right to a portion of the revenue derived from Sixteenth Section school lands situated in a township within its territorial borders, the plaintiff occupied the position of the sovereign and that, in the absence of an express provision to that effect, Article 19, Section 26 should not be construed as prohibiting suits between state agencies. See Terrebonne Parish Sch. Bd. v. St. Mary Parish Sch. Bd., La.App., 131 So.2d 266. From this decision, writs were applied for and were granted by this Court.

We cannot subscribe to the views of the Court of Appeal because Article 19, Section 26 could not be more clear and explicit in its command that the Legislature must first be applied to and permission be granted before a suit may be entertained against a parish school board. However, we think the exceptions were properly overruled for an entirely different reason, as will be hereinafter shown.

In considering whether the parish school boards are presently immune from suit, a short review of the pertinent legislation on the subject may be helpful. In the statute (Act 100 of 1922, § 17, Par. I, now R.S. 17:51) providing for the establishment of parish school boards, pursuant to the mandate of Section 10 of Article 12 of the Constitution, these boards are made subject to suits. The statute declared that:

"There shall be a parish school board for each of the parishes, and these several parish school boards are constituted bodies corporate with the power to sue *and be sued* under the name and style (Name of Parish) Parish School Board * * *". (Emphasis supplied).

Until 1956, there was this general waiver of sovereign immunity with respect to par-

ish school boards. The adoption of Article 19, Section 26 in 1956 had the effect of deleting from R.S. 17:51 the phrase "and be sued". Unfortunately, the parties litigant and the courts below apparently assumed that the law rested at this point and failed to examine constitutional amendments and legislative enactments subsequent to Section 26 of Article 19 in an effort to ascertain whether its provisions, insofar as they pertain to parish school boards, are still effective. As a consequence, we have not had the benefit of argument or briefs concerning posterior laws that very definitely affect the question now before us.

In analyzing the provisions of Section 26 of Article 19 of the Constitution, we particularly note that the withdrawal of the State's consent to sue any of the special agencies enumerated therein, is subject to two exceptions, (1) in cases seeking enforcement of contracts made by any of the special agencies or for the recovery of damages for the breach thereof, and (2) "in individual cases" whenever the Legislature has granted the right to sue, "in compliance with Section 35 of Article III of this Constitution".

Section 35 of Article 3 of the Constitution, as amended by Act 385 of 1946, pro-vided merely for special legislative authorizations for a suit or suits against the State and its subdivisions in individual cases and did not comprehend a general legislative waiver of immunity which had previously existed under R.S. 17:51 as to parish school boards. However, the Legislature proposed at its regular session of 1960, by Act No. 621 thereof, a complete revision of the provisions of Section 35 of Article 3 of the Constitution [1] which, inter alia, would vest the Legislature with more extensive powers respecting the right and authority to waive governmental immunity. This constitutional amendment was adopted by the people on November 8, 1960 and became effective on December 18, 1960. It provides, so far as pertinent here, that the Legislature is empowered to waive * * * by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, * * * public boards, * * * and other public or governmental bodies; * * *".

■ Thus, it is seen that this constitutional amendment effectively extended the legislative power of waiver of immunity from suit against the special agencies (school boards) enumerated in Section 26 of Article 19, which was restricted therein

---

1. This proposed constitutional amendment was occasioned by our 1959 decisions in Duree v. Maryland Cas. Co., 238 La. 166, 144 So.2d 594 and Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793, holding that, under the clear language of Section 35 of Act 3, the Legislature could waive only immunity of the State and its agencies from suit but not their immunity from liability.

to individual cases, so that thereafter the Legislature was empowered to waive immunity by special or general laws or resolutions. Conformably with the authority vested in it by the 1960 amendment to Section 35 of Article 3, the Legislature, by Section 1 of Act 25 of the First Extraordinary Session of 1960, amended and reenacted R.S. 17:51 providing for the establishment of a parish school board for each of the parishes, constituting the boards as bodies corporate with the power "* * * to sue and be sued under the name and style (Name of Parish) Parish School Board. * * *" Hence, by virtue of this statute, parish school boards have been restored to their original legal status of corporate entities subject to suit which had prevailed since their establishment, save for the short period of time during which Section 26 of Article 19 affected them.

In applying the legislation enacted subsequent to Section 26 of Article 19 and holding that it renders that constitutional amendment ineffective as to parish school boards, we have not overlooked the possibility that counsel for the defendant school board might have been able to present argument in opposition, had plaintiff's counsel cited and relied upon this subsequent legislation in the lower courts and here. In our study of the matter, we have conceived that

there are probably two objections which might be advanced with respect to the effectiveness of the 1960 reenaction of R.S. 17:51 to the matter at hand. Therefore, anticipating that these objections will be made in an application for a rehearing (together with any other legal arguments of which we are not aware at this time) we consider it appropriate, under the circumstances of the case, to express views respecting them at this time.

First, we take cognizance of the fact that the major portion of the acts and resolutions passed by the Legislature in the First Extraordinary Session of 1960 have been declared void as contravening the Federal Constitution by a three judge United States District Court. Bush v. Orleans Parish School Board, D.C., 188 F.Supp. 916.[2]

Act 25 is one of the statutes specifically named in the decree in the Bush case, above referred to, as being unconstitutional. However, this Act is described in the body of the Court's opinion as being one of the statutes passed in the First Extraordinary Session of 1960 which purported to abolish the Orleans Parish School Board; that, although these local measures are admittedly in the area peculiarly reserved by the Federal Constitution for exclusive State action, they were part and parcel of the "segregation package" introduced at the Special

**2.** This decision was affirmed without opinion on May 8, 1961 by the Supreme Court of the United States. See New Orleans, appellant, v. Bush, et al., 366 U.S. 212, 81 S.Ct. 1091, 6 L.Ed.2d 239.

Session of 1960 which had for its purpose the preservation of segregation in the schools, contrary to the U. S. Supreme Court decision in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and that, therefore, they are all unconstitutional.[3]

And, in Appendix "B" (attached to and made part of the opinion in the Bush case), which summarizes the laws and resolutions enacted by the First Extraordinary Session of 1960 stricken as unconstitutional by the Court, Act 25 is stated to be an Act repealing R.S. 17:121, relating to the election and qualification of the members of the Orleans Parish School Board.

Thus it is manifest that the Federal Court was interested only in preserving the law establishing the Orleans Parish School Board, and providing for the election of its members for stated terms, and it struck as unconstitutional the repeal of that law (R. S. 17:121) by Section 2 of Act 25 of the First Extraordinary Session of 1960. Its decree, when viewed in the light of the statements in the opinion and the appendix,

can be construed as going no further.[4] Assuredly, it cannot be seriously contended that R.S. 17:51, as reenacted by Section 1 of Act 25 of 1960, is violative of the Federal Constitution or that its provisions are calculated to deprive Negro children of their constitutional rights.

Secondly, it might be argued that, since the amendment to Article 3, Section 35 had not officially become part of the Constitution °at the time Act 25 was enacted, the Legislature acted without constitutional authority in waiving the parish school boards' immunity to suit. As aforesaid, the amendment to Article 3, Section 35 was proposed to the voters by Act 621 of the Regular Session of 1960 which was a Joint Resolution of the Legislature. The election of November 8, 1960 was set as the date the amendment was to be voted on. The amendment was approved by the electorate on that date and the Governor proclaimed the results of the election on November 28th. Under Article 21, Section 1 of the Constitution, the amendment did not become part of the Constitution until twenty

3. The pronouncement that a statute, clear and unambiguous in its terms, is to be stricken with invalidity solely on the basis of motive is contrary, in our opinion, to all previous jurisprudence throughout the land, both State and Federal. For an excellent discussion of the prior jurisprudence see concurring opinion of Janvier, J., in Lelong v. Sutherland et al., (La. App.) 134 So.2d 627, decided on November 7, 1961.

4. Our action in looking beyond the decree into the body of the opinion to determine the precise effects of the judgment is consistent with the jurisprudence of this Court. See California Company v. Price, 234 La. 338, 99 So.2d 743 (1957). By construing the decree in the Bush case in keeping with the views expressed in the body of the opinion, a result is reached consonant with the Court's intent. To do otherwise would produce an absurd consequence.

days had elapsed from the time of the Governor's proclamation. December 18, 1960 was, therefore, the effective date of the amendment, whereas, Act 25 of the First Extraordinary Session, which was designated as emergency legislation, was signed by the Governor on the evening of November 8th and, purportedly, became effective immediately. At this time, all contingencies were removed from the amendment process and all that remained, before the amendment became part of the Constitution, was for the Governor to make his proclamation and for the requisite amount of time to elapse.

This situation, in which the legislative act pre-dates the formal effectiveness of the constitutional authority for such act, was present in Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867. There, it was held that an Act, which was passed at the same time that a constitutional amendment was proposed and made conditional upon the adoption of the amendment, had no validity notwithstanding that the amendment was subsequently adopted.

However, at the time this case was decided (1912), there was no provision of our Constitution which permitted the passage of a law conditioned for its effectiveness upon the adoption of a proposed constitutional amendment. But this was remedied by the Constitution of 1921, as it provided by Section 2 of Article 21 that:

"Whenever the Legislature shall submit amendments to this Constitution, it may, at the same session, pass laws to carry them into effect, to become operative when the proposed amendments have been ratified."

Accordingly, it is plain that the ruling in Etchison Drilling Co. v. Flournoy no longer obtains. Under the 1921 Constitution it has been consistently held that statutes made contingent upon ratification of proposed amendments to the Constitution are valid. Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508; Peck v. Tugwell, 199 La. 125, 5 So.2d 524.

Act 25 of 1960 was not passed at the same session as that at which the constitutional amendment, on which it depends for its validity, was passed. But, since it was enacted at a later legislative session, we cannot discern that this circumstance makes any material difference. The language of the Constitution authorizing the passage of laws dependent for their validity on constitutional amendments proposed at the same session is permissive. Hence, we know of no reason why legislation may not be enacted at a subsequent session when a constitutional amendment upon which it is dependent for its validity has been proposed at a prior session of the Legislature.

Nor do we find that Section 2 of Article 21 of the Constitution requires, or

that it is essential to the ultimate validity of the statute, that it be stated in the Act that its effectiveness is dependent on the ratification of the proposed constitutional amendment. See Galveston B. & C. Narrow-Gauge R. Co. v. Gross, 47 Tex. 428 (1877). It suffices, we think, that the Act be passed at the same legislative session or at a session subsequent to that at which the constitutional amendment was proposed. When this is done, it will be presumed, as found by the Supreme Court of Texas in the case above cited, that the Act was passed in anticipation of the adoption of the proposed constitutional amendment.

Actually, in the case at bar, it appears that, at the time Act 25 was signed into law (7:15 p. m. on November 8, 1960) the electorate had already adopted the amendment to Section 35 of Article 3 of the Constitution and only the formality of proclamation and the lapse of time stood in the way of its effectiveness. This situation closely parallels that presented in Druggan v. Anderson, 269 U.S. 36, 46 S.Ct. 14, 70 L.Ed. 151, wherein the validity of the National Prohibition Act was challenged on the ground that it was enacted prior to the effective date of the 18th Amendment, although after the ratification of the amendment by the requisite number of states. The Act was, of course, upheld in an opinion by Mr. Justice Holmes.

Being of the view that the Legislature has waived the immunity of parish school boards from suit in the exercise of constitutional authority to do so, the judgment of the Court of Appeal is affirmed.

HAMITER, J., concurs in the result.

138 So.2d 109