205 So.2d 831 (1967)
Geneva PIERCE, Plaintiff-Appellant,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK et al., Defendant-Appellees.
No. 7172.
Court of Appeal of Louisiana, First Circuit.
December 19, 1967.
Rehearing Denied January 29, 1968.
James A. Burnett, of Walton J. Barnes, Baton Rouge, for appellant.
R. Gordon Kean, Jr., Charles E. Pilcher, Baton Rouge, for appellees.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Geneva Pierce instituted this suit against the City-Parish Government of the City of Baton Rouge, its liability carrier, Fidelity & Casualty Company of New York, and the unknown driver of a garbage truck owned *832 by the City of Baton Rouge. Plaintiffs allege that on July 8, 1965, in the 1600 block of Scenic Highway, the city garbage truck stopped suddenly in front of a vehicle owned and driven by Geneva Pierce and occupied by two guest passengers, Lottie Kelly[1] and Isaac Campbell,[2] all of whom sustained injuries. Each of the guest passengers filed suit against the above mentioned defendants, and the three suits were consolidated for the purpose of trial.
The City of Baton Rouge filed peremptory exceptions of no cause or right of action on the ground that the collection and disposal of garbage and trash is a governmental function for which, in the absence of specific legislative authorization, no liability attaches.
The trial judge sustained the exceptions and dismissed plaintiffs' suits. Plaintiffs prosecute this appeal and contend that the trial judge erred in failing to hold that the Charter of the City of Baton Rouge, when construed with Article 3, Section 35 of the Louisiana Constitution of 1921, as amended in 1960, constitutes a waiver of immunity from both suit and liability on behalf of the City of Baton Rouge for the negligent acts of its employees. Plaintiff contends that said waivers of suit and liability apply irrespective of whether the negligent acts of a governmental employee are deemed "proprietary" or "governmental".
Article 3, Section 35 of the Constitution of 1921, as amended in 1960, provides:

"The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability. The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, including rules of venue and service of process, to govern suits against the state and other public bodies; the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants. No judgment against the state or any other public body shall be exigible, payable or paid except out of funds appropriated for payment thereof. The Legislature may waive any prescription or peremption which may have accrued in favor of the state or other public body against any claim or claims on which suit is so authorized; and any prescription or peremption which may heretofore have accrued, or which would otherwise accrue prior to January 1, 1962, against any claim against the state or other public body on which suit heretofore has been authorized by the Legislature, is hereby waived, provided that suit on such claim is brought prior to January 1, 1962. No suit authorized under this constitutional provision shall be instituted in any court other than a Louisiana State court. In the case of any such claim on which suit heretofore has been authorized by the Legislature, and the suit was dismissed on the ground that the defendant's immunity from liability had not been waived, another suit on the same claim may be filed at any time prior to January 1, 1962, and such suit shall not be subject to the defense of res judicata based on the dismissal of the prior suit on such claim." (Emphasis added.)
*833 Plaintiff asserts that the City has waived both immunity to suit and liability because the Legislature has "heretofore" authorized suit against the City of Baton Rouge, said authorization being found in the Charter of the City of Baton Rouge, Act 169 of 1898:
"SECTION 1. The City of Baton Rouge, and all inhabitants thereof shall be a body corporate and are hereby established as a political corporation, to be known as the `City of Baton Rouge' and by that name they, and their successors, shall be known in law, and shall be capable of suing and being sued, and of prosecuting and defending in all courts and in all actions and matters whatsoever, * * *" (Emphasis added.)
Plaintiff cites Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529 (1965) in support of the above contention and also for the proposition that there is no longer a valid distinction between "governmental" and "proprietary" functions of a municipality in actions dealing with tortious conduct of governmental employees.
Defendant directs our attention to the fact that our jurisprudence has long recognized the distinction between governmental and proprietary functions i. e., municipal corporations, in the performance of powers and obligations of a public nature, are exempt from tort liability, but in performance of powers and obligations of a private nature, are held to the same responsibility for its torts as an individual. Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132; Cobb v. Louisiana Board of Institutions, 229 La. 1, 85 So.2d 10.
Defendant contends that the delegated authority of the City of Baton Rouge to "sue and be sued" was granted solely for the purpose of permitting suit for alleged wrongs which occur as a result of the city's "proprietary" functions.
Defendant states "The point we seek to make here is that in light of the jurisprudence, it could not have been the intention of the Legislature in proposing the 1960 amendment or of the people in adopting it, to waive the traditional immunity of the municipality in connection with the performance of governmental functions merely because the municipal charter adopted many years before authorized the municipality to sue and be sued. We say this because prior to Hamilton, the Courts had always construed the authority to `sue and be used' as applicable only to the `proprietary' functions."
In order to fully understand the impact and meaning of the above constitutional amendment when construed with the delegated authority of the City of Baton Rouge to "sue and be sued", it is necessary to consider the jurisprudential development before and after (particularly the Hamilton decision) the 1960 amendment as well as previous amendments to Article 3, Section 35.
Article 3, Section 35 of the Louisiana Constitution of 1921 originally provided:
"Whenever the Legislature shall authorize suit to be filed against the State, it shall provide a method of procedure and the effect of the judgments which may be rendered therein."
The above section was interpreted in Lewis v. State, 207 La. 194, 20 So.2d 917 (1945) which decided two important points:
"* * * Firstly, the court held that when the legislature authorized suit against the state to recover damages because of the wrongful acts of the hospital employees, it necessarily waived the state's immunity from liability for these wrongful acts. This made plenty of sense, and it was followed consistently until the decision in the Duree case. Secondly, the court held that, under the peculiar language of Article III, § 35 of the Constitution, the legislatureand not the legislature and the Governorwere empowered to authorize suits against the *834 state and to provide the effect of judgments rendered therein."[3]
This latter point proved unworkable, and in 1946 the Legislature amended Article 3, Section 35 in order to "prevent the legislature from making provision for the payment of judgments in these cases, except through a subsequent legislative appropriation subject to the normal constitutional controls, including the veto power of the Governor * * *" "* * * In an abundance of caution, and to absolutely prohibit the legislature from making provision for the payment of the judgment in the authorizing resolution, the final sentence was added:
"Except as otherwise specially provided in this section, the effect of any authorization by the Legislature for a suit against the State shall be nothing more than a waiver of the State's immunity from suit insofar as the suit so authorized is concerned.'"[4]
In Duree v. Maryland Casualty Company, 238 La. 166, 114 So.2d 594, the court pointed out that there exists a distinction between the traditional immunity of the State from suit and its long recognized immunity from liability vel non as respects actions based on torts committed by agents engaged in the performance of governmental functions and held that any act of the Legislature attempting to waive governmental immunity from tort liability would be unconstitutional as being in violation of Article 3, Section 35 of the Constitution of 1921 as amended by Act 385 of 1946.
Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793 adhered to the Duree decision and extended its holding to state subdivisions.
The Duree and Stephens cases were sharply critized by the late Professor Henry G. McMahon and Ben R. Miller, Jr. in 20 Louisiana Law Review 449. The essence of their comments is that Duree and Stephens are shocking and alarming due to the fact that before and after the 1946 amendment the legislature, in many instances, waived governmental immunity in suits ex delicto. The fact that Duree and Stephens held such a waiver of governmental immunity to be unconstitutional, in the opinion of the above noted authors, was simply an "invitation to visit the courthouse" in order to receive legislative authorization to sue, and subsequently have said suit dismissed under the exception of no cause of action"a cruel hoax on the unfortunate claimants."
The 1960 amendment of Article 3, Section 35 was designed to rectify the problems presented by the Duree and Stephens cases. This fact was recognized by our Supreme Court in Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529.
The Hamilton case deals with a situation in which the City of Shreveport damaged plaintiff's properties as a result of the City's action in raising the water level of the lake in order to maintain an adequate water supply for the City water works system. Plaintiffs contend that the immunity from both suit and liability of the defendant is expressly waived under the Constitution, as amended, inasmuch as the Legislature incorporated in the City Charter of Shreveport language empowering the City to sue and be sued. Defendant urged that the Legislature "never intended to eliminate the right of the City to impose as a defense its governmental immunity as a bar to delictual actions involving its performance of such activity", (as does the defendant in the instant case) but rather, was endeavoring to cure the specific problem created by the Duree and Stephens cases by providing that the Legislature could waive immunity *835 from liability whenever appropriate. The court, in Hamilton, stated:
"A mere reading of Section 35, reported in full in footnote 2, will readily disclose that the Legislature is empowered to waive the immunity of the state and its political subdivisions from both suit and liability, and further specifically provides that `each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes * * * as a waiver of the defendant's immunity both from suit and from liability.' See, Terrebonne Parish School Board v. St. Mary Parish School Board, 242 La. 667, 138 So.2d 104 and Pittman Construction Company v. Housing Authority of New Orleans, La. App., 169 So.2d 122. (Emphasis ours).
From the foregoing, it is obvious that the argument of counsel for the defendant that the Legislature, in proposing the amendment at issue and the people in adopting it, only intended to waive the immunity of the state and its subdivisions from tort actions resulting from their proprietary activities and not to waive the traditional immunity of the state and is subdivisions in actions founded on the tortious conduct of its officers and employees when functioning in a governmental capacity, is clearly without merit and we fail to appreciate the rationale of counsel's ingenious argument that the provisions of Chapter 2, Section 2.10 of the Charter of Shreveport, reported in full in footnote 4, exclude Shreveport as one of the subdivisions of the state covered by Section 35 of Article 3 of the Constitution, as amended."
The Hamilton decision clearly disposes of defendant's contention that the 1960 amendment to Article 3, Section 35 did not intend to "waive the traditional immunity of the municipality in connection with the performance of governmental functions merely because the municipal charter adopted many years before authorized the municipality to sue and be sued."
"The Hamilton decision informs the legislature that if it chooses to waive the governmental immunity of the state and its subdivisions it does so both as to governmental and proprietary functions. The decision also has a retrospective effect in that any municipal charter which presently contains a clause permitting the municipality to be sued will be interpreted as having waived the traditional immunities."[5]
The Hamilton case was followed in Fredieu v. City of Winnfield, La.App., 180 So.2d 48. While removing a tire from the wheel of a city garbage truck, the metal rim of the wheel flew off and injured plaintiff. The court cited Hamilton for the proposition that LSA-Const. Art. 3, § 35 provided for a waiver of the traditional immunity of the state and its subdivisions in actions founded on tortious conduct of employees when functioning in a governmental capacity. On application for writs, the Supreme Court stated: "Writs refused. On the facts found by the Court of Appeal, we find no error of law in its judgment." Fredieu v. City of Winnfield, 248 La. 529, 180 So.2d 541.
In Walesch v. City of New Orleans, La. App., 195 So.2d 302 plaintiff sued the City of New Orleans for injuries allegedly sustained as a result of the negligent operation of a garbage truck by a city employee.
The Court quoted the 1960 amendment to Article 3, § 35 of the Constitution of 1921, considered the Hamilton case, and stated:
"The City of New Orleans is in no different position from that occupied by the City of Shreveport. The Legislature has *836 granted authority to the City of New Orleans to sue and be sued and under the holding in Hamilton v. City of Shreveport, supra, this amounts to full legislative waiver of governmental immunity in suits such as we have before us."
Lambert v. Austin Bridge Company, La. App., 189 So.2d 752 dealt with a personal injury action in which the State Highway Department was made a third party defendant. LSA-R.S. 48:22 authorizes the Highway Department to "sue and be sued". We held that the Hamilton decision was controlling and that the immunity formerly enjoyed by the Department of Highways under R.S. 48:22 has been effectively waived by the enactment of Article 3, Section 35 of the Constitution of 1921, as amended in 1960.
Defendant avers that certain acts passed in 1960 and 1966 clearly illustrate that specific legislative authority waiving both immunity from suit and liability is necessary in order to file suit against the state or any of its political subdivisions.
LSA-R.S. 13:5103, 5106, 5107, and 5108 are cited by defendant as proof that the legislature did not intend the 1960 amendment to Article 3, Section 35 to provide a "blanket waiver" of immunity as was held in Hamilton.
Undoubtedly, LSA-R.S. 13:5103, 5106, 5107, and 5108 are procedural rules enacted pursuant to the 1960 amendment to Art. 3, § 35. In Pelloat v. Greater New Orleans Expressway Commission, La.App., 175 So. 2d 656 we stated:
"The amendment further authorized the Legislature to `prescribe the procedural rules' in such suits.
Cognizant of that authority the Legislature adopted Act 27 of 1960, now R.S. 13:5101 et seq. which does in fact prescribe procedural rules for suits against the State or public bodies. * * *"
It is alleged by defendant that R.S. 13:5107 which reads as follows:
"The defendant in any suit authorized by the Louisiana Legislature to be filed against the State of Louisiana or one of its political subdivisions shall not be entitled to file a plea of prescription or peremption barring such suit, provided that any such suit shall be filed within one year after the effective date of the act or resolution of the legislature authorizing such suit, and for the purposes of this Section the effective date of a resolution authorizing suit shall be at twelve o'clock noon on the twentieth day after the sine die adjournment of the legislature." (Emphasis added)
would be "difficult to apply in the case of a municipality authorized to `sue and be sued' by an act adopted in 1898."
An examination of the recent amendment to Art. 3, § 35 reveals that "The legislature is * * * permitted to waive (as was done in R.S. 13:5107) any prescription or peremption which may have accrued in favor of the state or other public body, with the proviso that any such prescription or peremption accruing prior to January 1, 1962, is waived by the amendment itself, provided the suit or such claim is brought before that date.[6] (Emphasis ours.)
It is noted by defendant that a number of acts passed by the 1966 Regular Session of the Legislature provide for suit against various political subdivisions of the state which have heretofore been granted authority to "sue and be sued". Cited as an example is the following:
"In Act 117 of the Regular Session of 1966, being an act authorizing Edward J. Price and/or Bayou Marine Corporation to enter suit against the State of Louisiana through the Department of Highways, *837 the pertinent paragraph reads as follows:
"Section 3. That the Legislature of this State acknowledges the responsibility of this State and the Department of Highways, in this particular case for any negligent or tortious acts of its agents or employees, if any there has been, and waives any immunity, therefore, providing that this waiver of immunity be not construed as an admission of liability, which issue must be determined by the Courts as in any other case.'" (Emphasis added.)
Defendant also directs our attention to LSA-R.S. 24:152, a legislative act passed in 1966 and entitled "Suits against State or Political Subdivisions; Omnibus Bill or Resolution; Form." This statute provides a form to be used by a claimant in a suit against the state or one of its political subdivisions and provides for a waiver of prescription and a waiver of immunity from suit and immunity from liability.
R.S. 24:152 must be considered in light of Article 19, Section 26, of the Constitution, as amended in 1956, which requires individual legislative authorization for each action ex delicto against a special agency, as defined therein:
"Section 26. The following named commissions, boards, bodies, or municipal corporations are and shall be considered special agencies of the State of Louisiana:
(1) The State Parks Commission of Louisiana,
(2) The Recreation and Park Commission for the whole parish of East Baton Rouge,
(3) All recreation districts created under terms of Article XIV, Section 14 (d-4) of this Constitution;
(4) Any municipal corporation, parish or subdivision of the State in matters respecting the operation or maintenance of parks and other recreational facilities or in connection with any rule or regulation applicable thereto,
(5) The State Board of Education,
(6) The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College,
(7) The parish school boards of each of the parishes of the State of Louisiana,
(8) The school boards of the municipalities of Monroe in Ouachita Parish and Lake Charles in Calcasieu Parish, and Bogalusa in Washington Parish,
(9) The State Superintendent of Public Education in his capacity as such as well as in the capacity of ex-officio secretary of the State Board of Education, and
(10) The State Department of Education."
It should be noted that Section 26 of Article 19 no longer applies to parish school boards. See Terrebonne Parish School Board v. St. Mary Parish School Board, 242 La. 667, 138 So.2d 104, which stated:
"* * * [I]t is seen that this constitutional amendment (1960 amendment to Art. 3, § 35) effectively extended the legislative power of waiver of immunity from suit against the special agencies (school boards) enumerated in Section 26 of Article 19, which was restricted therein to individual cases, so that thereafter the Legislature was empowered to waive immunity by special or general laws or resolutions. Conformably with the authority vested in it by the 1960 amendment to Section 35 of Article 3, the Legislature, by Section 1 of Act 25 of the First Extraordinary Session of 1960, amended and reenacted R.S. 17:51 providing for the establishment of a parish school board for each of the parishes, constituting the boards as bodies corporate with the power `* * * to sue and be sued under the name and style (Name *838 of Parish) Parish School Board. * * * ` Hence, by virtue of this statute, parish school boards have been restored to their original legal status of corporate entities subject to suit which had prevailed since their establishment, save for the short period of time during which Section 26 of Article 19 affected them." (Emphasis added.)
It is our opinion that the omnibus bill, R.S. 24:152 serves a two-fold purpose: It is designed to apply (1) to those special agencies enumerated in Section 26 of Article 19 which have not been restored to their original legal status of corporate entities subject to suit, and (2) cases in which attorneys, out of an abundance of caution, seek to obtain legislative authorization as they have done in the past when filing suit against the state or its political subdivisions.
Cognizance should be taken of the fact that the case filed under Act 117 of the 1966 Legislature, as noted supra, was instituted without the benefit of the omnibus bill. Yet, a reading of Act 117 discloses that it incorporates the substantive law provided in the 1960 amendment to Article 3, Section 35 of the 1921 Constitution.
The attitude of the bar in proceeding with caution is understandable. The several amendments to Article 3, Section 35 of the Louisiana Constitution, and the many cases interpreting said constitutional provision, particularly the Duree case, have admittedly created no small amount of confusion and uncertainty.
The full impact and meaning of the 1960 amendment to Article 3, Section 35, and the holding of the Hamilton case have not yet been fully absorbed by the bar. Lawyers may continue to seek legislative authorization until the "gray area," which has long been a part of Article 3, Section 35, is made clearer by subsequent legislation and jurisprudence. The legislature, realizing this, has provided an omnibus bill which incorporates the provisions of Article 3, Section 35.
For the above and foregoing reasons the judgment of the district court sustaining defendant's peremptory exception is overruled and this cause is hereby remanded for a trial on the merits consistent with the views expressed herein.
Reversed and remanded.
NOTES
[1] Kelly v. Fidelity and Casualty Company of New York, et al., La.App., 205 So. 2d 838.
[2] Campbell and Campbell v. Fidelity and Casualty Company of New York, et al., La.App., 205 So.2d 839.
[3] See McMahon & Miller, The Crain Mytha Criticism of the Duree and Stephens Cases, 20 La.L.Rev. 449, 453-454 (1960).
[4] McMahon & Miller, The Crain Myth a Criticism of the Duree and Stephens Cases, 20 La.L.Rev. 449 at p. 459.
[5] Jimmy L. Dauzat, Offenses and Quasi OffensesWaiver of Governmental Immunity Abrogation of the Distinction Between Proprietary and Governmental Functions, XL Tul.Law Rev. 213-218 (1965).
[6] William C. Harvard, The 1960 Proposals to Amend the Louisiana Constitution, 21 La.Law Rev. 109, at p. 111.